UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| AMERICAN ZURICH INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>　　　　　Plaintiffs,<br><br>　　vs.<br><br>J. CRISMAN PALMER and GUNDERSON, PALMER, NELSON & ASHMORE, LLP,<br><br>　　　　　Defendants. | 5:20-CV-05026-KES<br><br><br>ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS |

Plaintiffs, American Zurich Insurance Company and Zurich American Insurance Company (collectively "Zurich"), brought suit against defendants, J. Crisman Palmer and Gunderson, Palmer, Nelson & Ashmore, LLP (GPNA), alleging one count of breach of fiduciary duty. Dockets 1, 13. Palmer and GPNA move for judgement on the pleadings. Docket 15. Zurich resists the motion. Docket 21. For the following reasons, the court denies Palmer and GPNA's motion for judgment on the pleadings.

**BACKGROUND**

The facts as alleged in the amended complaint[1] are:

American Zurich Insurance Company is an Illinois corporation with its home office and principal place of business in Schaumburg, Illinois. Docket 13 ¶ 1. Zurich American Insurance Company is a New York corporation with its principal place of business in Schaumburg, Illinois. *Id.* ¶ 2. Palmer is a citizen and resident of South Dakota, and GPNA is a South Dakota limited liability partnership and has its principal place of business in Rapid City, South Dakota. *Id.* ¶¶ 3-4.

On February 27, 2015, Joseph Leichtnam[2] filed suit in this court against Zurich and others. *Id.* ¶ 8; *see also Leichtnam v. American Zurich Insurance Company*, No. 5:15-CV-5012-JLV (D.S.D.). Leichtnam alleged that he was injured while employed by Rommesmo Companies d/b/a Dakota Steel & Supply, Inc., and that his injury was compensable under Rommesmo's workers' compensation insurance. Docket 13 ¶¶ 12-13. Zurich provided Rommesmo's workers' compensation insurance. *Id.* ¶ 14. Leichtnam alleged

---

[1] The court supplements the factual background with facts found in *Leichtnam v. American Zurich Insurance Company et al.*, No. 15-CV-5012-JLV (D.S.D.), a case that is embraced by Zurich's First Amended Complaint and a matter of public record. Thus, this court may consider *Leichtnam* on a motion for judgment on the pleadings. *See C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) ("Our interpretation of the phrase face of the complaint includes public records and materials embraced by the complaint[.]" (internal quotation and alterations omitted)).
[2] Despite Zurich's consistent references to "Leichtman" in the Amended Complaint (Docket 13), the correct last name of the plaintiff in the underlying lawsuit is Leichtnam. *See Leichtnam*, No. 5:15-CV-5012-JLV (D.S.D.).

that Zurich handled Leichtnam's claim for workers' compensation benefits in bad faith. *Id.* ¶ 15. Zurich retained Palmer and GPNA as legal counsel to deny Leichtnam's bad faith claim and otherwise defend against Leichtnam's complaint. *Id.* ¶ 16. Zurich had an attorney-client relationship with Palmer and GPNA as to the Leichtnam lawsuit, and Palmer and GPNA owed certain fiduciary duties to Zurich. *Id.* ¶ 17. Palmer and GPNA filed an answer to Leichtnam's complaint on April 30, 2015. *Id.* ¶ 18. The answer did not plead any separate and distinct affirmative defenses. *Id.* ¶ 19. The court's scheduling order set a deadline of August 31, 2015, for the parties to amend the pleadings. *Id.* ¶ 20.

On September 7, 2018, Palmer and GPNA filed a motion to amend the answer and sought to add several affirmative defenses that had not been previously pleaded. *Id.* ¶ 21. On the same day, Palmer and GPNA filed a motion to dismiss Leichtnam's complaint based on, among other things, the new affirmative defenses of "release" and "res judicata" that the proposed amended answer sought to assert. *Id.* ¶ 21. Palmer and GPNA withdrew as counsel for Zurich on February 20, 2019. *Leichtnam*, No. 15-CV-5012, Docket 75.

On August 28, 2019, the court entered an order denying Zurich's motion to amend the answer, stating that "woefully absent is any explanation for the delay of three years in bringing the motion [to Amend]." Docket 13 ¶ 23 (alteration in original). *Id.* ¶ 24. The court also denied Zurich's motion to dismiss. *Id.* ¶ 26. In its order denying Zurich's motion to dismiss, the court refused to consider the affirmative defenses of release and res judicata that

Zurich had sought to include in its motion to amend because the court deemed the defenses waived. *Id.* ¶ 25.

Because the motion to dismiss was denied, Zurich was required to continue defending the case to the additional detriment and damage to Zurich. *Id.* ¶ 26. Palmer and GPNA's failure to timely assert necessary and dispositive affirmative defenses amounted to legal malpractice and caused significant damage to Zurich in its defense of the case brought by Leichtnam. *Id.* ¶ 27. Palmer and GPNA's failure to disclose their malpractice to Zurich created a conflict of interest that potentially disqualified Palmer and GPNA from any further representation of Zurich. *Id.* ¶ 28. Palmer and GPNA's conduct also negated the ability of Zurich to make informed decisions as to its legal representation and its defense of the Leichtnam lawsuit. *Id.*

Zurich's First Amended Complaint alleges one count of breach of fiduciary duty. *Id.* ¶¶ 29-34. The amended complaint alleges that as fiduciaries of Zurich, Palmer and GPNA owed a duty to disclose to Zurich: (1) the legal consequences of their failure to originally file necessary and dispositive affirmative defenses, (2) their untimely delay in seeking an amendment to add necessary and dispositive defenses, and (3) their inability to obtain court intervention to allow for an amendment to add necessary and dispositive affirmative defenses. *Id.* ¶ 30. The duty of Palmer and GPNA to make such disclosures was ongoing, but disclosure did not occur until 2018. *Id.* ¶ 31. Palmer and GPNA breached their fiduciary duty by failing to make disclosures to Zurich. *Id.* ¶ 32. Palmer and GPNA's breach of fiduciary duty caused Zurich

to suffer damages in its defense of the Leichtnam lawsuit. *Id.* ¶ 33. Zurich seeks compensatory damages, costs of bringing this litigation, and any other relief the court finds equitable and just. *Id.* at 6.

Palmer and GPNA moved for judgment on the pleadings on the sole count in the Complaint, breach of fiduciary duty. Docket 9. Three weeks later, Zurich filed the First Amended Complaint. Docket 13. Palmer and GPNA then moved for judgment on the pleadings as to the First Amended Complaint. Docket 15.

## LEGAL STANDARD

A court may grant a motion under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings "only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006). Judgment on the pleadings uses the same standard that the court would use when addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). "When evaluating a motion for judgment on the pleadings, a court must accept as true all factual allegations set out in the complaint, and must construe the complaint in the light most favorable to the plaintiff, drawing all inferences in his favor." *Wishnatsky,* 433 F.3d at 610. The "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted).

Under the judgment on the pleadings analysis, the court considers "the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (citation omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984). Because this case arises under diversity jurisdiction, this court must apply state substantive law and federal procedural law. *See Great Plains Tr. Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007).

## DISCUSSION

"A breach of fiduciary duty in the attorney-client relationship arises from the representation of a client and involves the fundamental aspects of an attorney-client relationship. The fiduciary obligations are twofold: (1) confidentiality; and (2) undivided loyalty." *Slota v. Imhoff & Assoc., P.C.*, 949 N.W.2d 869, 876-77 (S.D. 2020) (quoting *Behrens v. Wedmore*, 698 N.W.2d 555, 576 (S.D. 2005)). To prove a breach of fiduciary duty under South Dakota law, a plaintiff must prove the following: "(1) that the defendant was acting as plaintiff's fiduciary; (2) that the defendant breached a fiduciary duty to plaintiff; (3) that plaintiff incurred damages; and (4) that the defendant's breach of the fiduciary duty was a cause of plaintiff's damages." *Chem-Age, Indus., Inc. v.*

6

*Glover*, 652 N.W.2d 756, 772 (S.D. 2002) (citation omitted). To successfully state a claim for breach of fiduciary duty, the plaintiff must establish "a breach of confidence, a breach of loyalty, or both." *Behrens*, 698 N.W.2d at 576.

Zurich argues only that Palmer and GPNA breached its fiduciary duty of loyalty. *See* Docket 21. No party contends that the fiduciary duty of confidentiality is implicated in Zurich's amended complaint. *See id.*; Dockets 16, 22. Thus, the court confines its analysis to the fiduciary duty of loyalty.

In South Dakota, a wrongful action by an attorney does not necessarily become a breach of fiduciary duty. *Behrens*, 698 N.W.2d at 576. The South Dakota Supreme Court has recognized two "basic situations" where an attorney's wrongful action does amount to a breach of the fiduciary duty of loyalty:

> The first is when an attorney obtains a personal advantage, whether consisting of an acquisition from the client, a joint venture with the client, or usurpation of an interest in, or opportunity concerning, the subject matter of the retention. Second, the duty of undivided loyalty is imperiled when there are circumstances that create adversity to the client's interest. These circumstances may consist of an existing, personal adverse interest of the attorney, an interest of a prior or subsequent client, or conflicting interests of present and multiple clients.

*Id.* at 576 n.5.

The South Dakota Supreme Court has not explicitly recognized a breach of fiduciary duty claim for an attorney's failure to disclose potential malpractice. Because the South Dakota Supreme Court has not addressed the issue, this court must place itself in the South Dakota Supreme Court's position and attempt to predict how the Court would likely resolve the matter.

7

*See Raines v. Safeco Ins. Co. of Am.*, 637 F.3d 872, 875 (8th Cir. 2011) ("Absent controlling [state supreme court] authority, a federal court sitting in diversity must attempt to predict what that court would decide if it were to address the issue."). In making this prediction, a federal court "may consider 'relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data.' " *Id.* (quoting *Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.*, 118 F.3d 1263, 1268 (8th Cir. 1997)).

The court begins by looking at *Robinson-Podoll v. Harmelink, Fox & Ravnsborg Law Office*, 939 N.W.2d 32, 46 (S.D. 2020), a case that Zurich argues is "on-point" on the issue of recognizing a claim for failure to disclose potential malpractice. *See* Docket 21 at 4. There, Robinson-Podoll sued her former attorney, Howey-Fox, for legal malpractice arising from Howey-Fox's representation of Robinson-Podoll in a personal injury suit. *Id.* at 36. Robinson-Podoll alleged that Howey-Fox commenced the personal injury suit after the relevant statute of limitations had expired. *Id.* at 37. Robinson-Podoll claimed this alleged failure constituted malpractice and Howey-Fox's subsequent failure to disclose the purported malpractice was a breach of Howey-Fox's professional duty of care. *Id.* at 43.

The South Dakota Supreme Court held that an attorney has a "duty of care . . . to notify a client of an act, error, or omission that is reasonably expected to be the basis of a malpractice claim." *Id.* at 46. While the Supreme Court found that Howey-Fox owed Robinson-Podoll a duty to disclose her potential malpractice, questions of fact existed as to when the duty arose,

8

whether the duty was breached, and whether a breach caused Robinson-Podoll damage. *Id.* at 46 n.10. The Supreme Court stated that Howey-Fox had a duty to disclose potential malpractice at the latest "when the personal injury action . . . was dismissed" by the trial court based on improper service and expiration of the statute of limitations. *Id.* at 46. But some facts indicated that the duty may have arisen earlier, such as when Howey-Fox contacted her malpractice insurer. *Id.* at 46 & n.10.

A professional negligence malpractice claim is based on the duty of care existing in an attorney-client relationship, whereas a breach of fiduciary duty in the attorney-client relationship is based on a breach of the duties of confidentiality and loyalty. *Slota*, 949 N.W.2d at 876. Because the plaintiff in *Robinson-Podoll* brought a claim only for professional negligence, the Supreme Court stated "we do not address the circumstances in which a lawyer may have a fiduciary duty to disclose an error to a client." *Robinson-Podoll*, 939 N.W.2d at 44 n.7. Thus, Zurich's reliance on *Robinson-Podoll* as "on-point" is misplaced, though not entirely misguided.

In *Robinson-Podoll*, the South Dakota Supreme Court relied on the Eighth Circuit's analysis in *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609 (8th Cir. 2009). *Robinson-Podoll*, 939 N.W.2d at 43-45. In *Leonard*, the Eighth Circuit considered whether a former client could pursue a cause of action against his former lawyer for breach of fiduciary duty based on the attorney's failure to disclose a possible malpractice claim. *Leonard*, 553 F.3d at 628-31. There, the Dorsey law firm represented M&S, an investment bank who sought

9

to lend money to President, a management company that operated an Indian casino. *Id.* at 614. Dorsey failed to get approval from the National Indian Gaming Commission (NIGC) before M&S closed on the loan with President. *Id.* Before closing, Dorsey internally debated and ultimately believed that the documents needed NIGC approval in order to be enforceable, but Dorsey did not disclose this belief to M&S. *Id.* In fact, Dorsey represented to M&S that NIGC approval was *not* needed. *Id.* M&S and President closed the loan without NIGC approval. *Id.*

One year later, after President defaulted on the loan, President asserted that the loan was not enforceable because the loan documents lacked NIGC approval. *Id.* at 616. Dorsey then brought a lawsuit on behalf of M&S against President to recover the unpaid loan amounts. *Id.* Later, M&S's bankruptcy trustee brought a lawsuit against Dorsey for breach of fiduciary duty alleging that Dorsey had failed to disclose its acts of potential malpractice to M&S. *Id.* at 617, 628.

The Eighth Circuit sitting in diversity predicted that the Minnesota Supreme Court "would not hold a lawyer liable for failure to disclose a possible malpractice claim unless the potential claim creates a conflict of interest that would disqualify the lawyer from representing the client." *Id.* at 629. "When the lawyer's interest in nondisclosure conflicts with the client's interest in the representation, then a fiduciary duty of disclosure is implicated." *Id.* (quoting 3 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 24:5 at 543 (2008 ed.)). In order to hold the attorney liable under a duty to disclose, "the lawyer

10

must know that there is a non-frivolous malpractice claim against him such that 'there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by' his own interest in avoiding malpractice liability." *Id.* (quoting Restatement (Third) of the Law Governing Lawyers §§ 121, 125 (2000)). But a lawyer "may act in the client's interests to prevent an error in judgment from harming the client without breaching a fiduciary duty." *Id.* at 631.

Under that standard, the Eighth Circuit found that Dorsey did not breach its fiduciary duty when it represented M&S in the lawsuit against President even though Dorsey had not disclosed the need for NIGC approval. *Id.* at 630. The court found that M&S had failed to establish that it was damaged by the alleged malpractice underlying the fiduciary duty claim. *Id.* And Dorsey's representation of M&S against President for the unpaid loan amounts was "part of its legitimate efforts to prevent its possible error in judgment from harming M&S." *Id.* Because "there was not a substantial risk that Dorsey's interests were adverse to those of M&S" there was no duty to disclose. *Id.*

Although *Robinson-Podoll* only recognized a duty of care to disclose potential malpractice, the South Dakota Supreme Court, citing *Leonard*, stated "a lawyer's duty to disclose an error . . . may implicate *both* a fiduciary duty and the professional standard of care owed by an attorney to a client." *Robinson-Podoll*, 939 N.W.2d at 44 (emphasis added). In *Leonard*, the Eighth Circuit reasoned that a fiduciary duty is implicated when there is "any fact that

11

may limit the lawyer's ability to comply with the fiduciary obligations" of loyalty and confidentiality. *Leonard*, 553 F.3d at 629; *see also Robinson-Podoll*, 939 N.W.2d at 44. This is consistent with the South Dakota Supreme Court in *Behrens*, where the court stated, "the [fiduciary] duty of undivided loyalty is imperiled when there are circumstances that create adversity to the client's interest." *Behrens*, 698 N.W.2d at 576 n.5. Based on these previous decisions, this court predicts that the South Dakota Supreme Court would extend *Robinson-Podoll* and recognize that, under the standard in *Leonard*, an attorney can be held liable for breach of fiduciary duty for failure to disclose a possible malpractice claim if the potential claim creates a conflict of interest that would disqualify the lawyer from representing the client.

There is no factual or legal dispute that Palmer and GPNA owed Zurich the fiduciary duties of loyalty and confidentiality during the parties' attorney-client relationship. *See Behrens*, 698 N.W.2d at 576. To determine whether Palmer and GPNA had a fiduciary duty of disclosure, the court must determine whether the potential malpractice claims created a conflict of interest that would disqualify the Palmer and GPNA from representing Zurch. This type of conflict of interest requires that the lawyer "know[] 'there is a non-frivolous malpractice claim against him such that there is a substantial risk that the lawyer's representation of the client would be materially and adversely affected by his own interest in avoiding malpractice liability.' " *Robinson-Podoll*, 939 N.W.2d at 45 (quoting *Leonard*, 553 F.3d at 629).

Unlike in *Leonard* and *Robinson-Podoll* where the attorneys failed to disclose potential malpractice at any point throughout the representation, here the amended complaint alleges that in 2018 Palmer and GPNA *did* disclose to Zurich the "legal consequences" of their alleged acts of malpractice. Docket 13 ¶¶ 30-31. But the amended complaint also allows the court to draw the inference that Palmer and GPNA's disclosure was untimely. *See id.* ¶ 31 (alleging that the duty to disclose was ongoing and existed before actual disclosure in 2018). An untimely disclosure of potential malpractice would plausibly create a substantial risk of a conflict of interest between attorney and client. Thus, Zurich's amended complaint plausibly states that Palmer and GPNA had a duty to disclose the potential malpractice earlier, and they breached that duty.

Zurich has also pleaded that Palmer and GPNA's breach of duty caused Zurich's damages in its defense of the Leichtnam lawsuit. *Id.* ¶¶ 27-28, 33-34. Thus, the First Amended Complaint plausibly alleges the necessary duty, breach, cause, and damages arising from a breach of fiduciary duty.

## CONCLUSION

This court predicts that the South Dakota Supreme Court would recognize a cause of action for breach of fiduciary duty for failure to disclose potential malpractice. When construing the amended complaint in the light most favorable to Zurich, the non-moving party, Zurich has established that Palmer and GPNA owed Zurich a duty of disclosure, and the breach of duty

caused Zurich damage. Palmer and GPNA have failed to show that they are entitled to judgment as a matter of law. Thus, it is

ORDERED that Palmer and GPNA's motion for judgment on the pleadings (Docket 15) is denied.

It is FURTHER ORDERED that Palmer and GPNA's motion for judgment on the pleadings (Docket 9) is denied as moot.

Dated March 26, 2021.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE