

Colin F. Campbell

ccampbell@omlaw.com

Direct Line 602.640.9343

2929 North Central Avenue
21st Floor
Phoenix, Arizona 85012

Telephone 602.640.9000
Facsimile 602.640.9050
omlaw.com

September 30, 2022

Scott R. Hoyt
Pia Hoyt
136 South Temple, 19th Floor
Salt Lake City, Utah 84111
shoyt@piahoyt.com



EXHIBIT 115
12.19.22

Re:   *American Zurich Insurance Company v. J. Crisman Palmer*

Dear Mr. Hoyt:

This letter constitutes my written report, prepared at your request in connection with the above-referenced action pending in the District Court for the District of South Dakota.

## BACKGROUND INFORMATION

I graduated from the University of Arizona College of Law, *summa cum laude*, in 1977. After a judicial clerkship, and with the exception of working as an Assistant Federal Public Defender for two years, I worked as a lawyer in private practice from 1978 until 1990, and 2007 through the present. I practice in the areas of commercial and civil litigation and tort and criminal law, among others. I also have represented limited liability companies and closely held companies or their principals in transactions and litigation.

From 1990 to 2007, I served as a superior court judge in Maricopa County, Arizona. From 2000 to 2005, I was the presiding judge of the Maricopa County Superior Court.

Further information concerning my background, education, publications, and professional qualifications may be found in my curriculum vitae, which is attached.

I am being compensated for my services in this matter at the rate of $775 per hour for my study, analysis, preparation of this report, and testimony. I have no stake in the outcome of this matter.

## DOCUMENTS REVIEWED

I was retained by Pia Hoyt, counsel for Plaintiff American Zurich Insurance Company ("AZIC"), to express opinions regarding whether the acts and omissions of Defendants J. Crisman Palmer and Gunderson, Palmer, Nelson & Ashmore, LP ("GPNA") in the representation of AZIC violated ethical rules and fell below the applicable standard of care.[1]

---

[1] The instant action is captioned *American Zurich Insurance Company v. J. Crisman Palmer*, Case No. 5:20-CV-05026-KES, District Court for the District of South Dakota.

Scott R. Hoyt
September 30, 2022
Page 2

In forming my opinions, I also have worked with Jeff Molinar, a partner at Osborn Maledon. My opinions are based upon materials provided to Osborn Maledon by Pia Hoyt. I reserve the ability to supplement, modify, or change my opinions based on further information provided.

Mr. Molinar and I consulted on all the underlying materials. The documents the firm reviewed include the following:

1. Email string involving Cheryl Tague and Bill Fuller, dated June 2013;

2. Complaint, dated February 27, 2015;

3. Letter from Cris Palmer to Mike Abourezk and Michael Simpson, dated March 25, 2015;

4. Letter from Cris Palmer to Mike Abourezk and Michael Simpson, dated April 15, 2015;

5. Email with Zurich Guidelines for External Counsel, dated March 26, 2015;

6. Letter from Cris Palmer to Dawn Wagner, dated April 14, 2015;

7. Email involving Cris Palmer and Dawn Wagner, dated April 14, 2015;

8. Answer of Defendants American Zurich Insurance Company, Zurich American Insurance Company, and Zurich North America, dated April 30, 2015;

9. Form 52 Report, dated June 17, 2015;

10. Plaintiff's Rule 26(a)(1) Initial Disclosures, dated July 31, 2015;

11. Defendants' Initial Disclosures, dated August 5, 2015;

12. Letter from Cris Palmer to Dawn Wagner, dated September 23, 2015;

13. Letter from Mike Abourezk to Cris Palmer, dated September 24, 2015;

14. Letters (2) from Cris Palmer to Dawn Wagner, dated September 25, 2015;

15. Email involving Cris Palmer and Dawn Wagner, dated September 24, 2015;

16. Letter from Cris Palmer to Dawn Wagner, dated November 24, 2015;

17. Email involving Cris Palmer, Kristi Wood, and Dawn Wagner, dated December 14-15, 2015;

18. Letter from Cris Palmer to Mike Abourezk, dated December 21, 2015;

Scott R. Hoyt
September 30, 2022
Page 3

19. Letter from Cris Palmer to Dawn Wagner, dated December 23, 2015;

20. Email involving Cris Palmer and Dawn Wagner, dated January 6, 2016;

21. Letter from Cris Palmer to Dawn Wagner, dated February 1, 2016;

22. Letter from Cris Palmer to Dawn Wagner, dated February 17, 2016;

23. Email from Dawn Wagner to Cris Palmer and Kristi Wood, dated February 25, 2016;

24. Letter from Cris Palmer to Mike Abourezk, dated March 15, 2016;

25. Letter from Cris Palmer to Dawn Wagner, dated March 15, 2016;

26. Email from Cris Palmer to Mike Abourezk, dated March 24, 2016;

27. Letter from Cris Palmer to Dawn Wagner, dated April 7, 2016;

28. Letter from Cris Palmer to Dawn Wagner, dated April 8, 2016;

29. Letter from Cris Palmer to Mike Abourezk, dated April 27, 2016;

30. Email from Dawn Wagner to Cris Palmer and Kristi Wood, dated May 25, 2016;

31. Letter from Cris Palmer to Dawn Wagner, dated May 26, 2016;

32. Letter from Cris Palmer to Dawn Wagner, dated June 6, 2016;

33. Letter from Cris Palmer to Mike Abourezk, dated June 6, 2016;

34. Letter from Cris Palmer to Mike Abourezk, dated June 10, 2016;

35. Letter from Cris Palmer to Dawn Wagner, dated June 10, 2016;

36. Letter from Cris Palmer to Dawn Wagner, dated July 7, 2016;

37. Memorandum from Beth Young to Cris Palmer, dated October 21, 2016;

38. Mediation Position Statement of American Zurich Insurance Company, Zurich American Insurance Company, and Zurich North America, dated October 21, 2016;

39. Report of Elliott S. Flood, dated November 28, 2016;

40. Letter from Cris Palmer to Dawn Wagner, dated December 16, 2016;

41. Email involving Cris Palmer and Dawn Wagner, dated February 27, 2017;

Scott R. Hoyt
September 30, 2022
Page 4

42. Letter from Cris Palmer to Dawn Wagner, dated February 27, 2017;

43. Email involving Cris Palmer and Mike Abourezk, dated June 1, 2017;

44. Letter from Cris Palmer to Mike Abourezk, dated June 1, 2017;

45. Email from Mike Abourezk to Cris Palmer, dated December 5, 2017;

46. Letter from Cris Palmer to Dawn Wagner, dated December 7, 2017;

47. Email involving Cris Palmer and Dawn Wagner, dated December 7, 2017;

48. Memorandum from Cris Palmer to File, dated January 4, 2018;

49. Email from Dawn Wagner to Cris Palmer and Kristi Wood, dated January 4, 2018;

50. Letter from Cris Palmer to Dawn Wagner, dated January 5, 2018;

51. Letter from Cris Palmer to Paris Glazer, dated January 18, 2018;

52. Letter from Cris Palmer to Michael Marick and Paris Glazer, dated January 25, 2018;

53. Plaintiff's Answers to Defendants' First Set of Interrogatories to Plaintiff, dated March 7, 2018;

54. Email involving Paris Glazer and Dawn Wagner, dated August 30, 2018;

55. Affidavit of Paris B. Glazer, dated September 6, 2018, with attached Compromise and Settlement Agreement and Order for Approval, Petition for Hearing, and Answer to Petition for Hearing;

56. Zurich's Motion for Leave to File an Amended Answer and Affirmative Defenses, dated September 7, 2018;

57. Zurich's Amended Answer and Affirmative Defenses, dated September 7, 2018;

58. Zurich's Brief in Support of Its Motion for Leave to File an Amended Answer and Affirmative Defenses, dated September 7, 2018;

59. Zurich's Rule 12(c), (h)(2)(B) Motion to Dismiss, dated September 7, 2018;

60. Plaintiff's Response to Zurich's Motion to Dismiss and Motion to Amend Answer, dated October 1, 2018;

Scott R. Hoyt
September 30, 2022
Page 5

61. Zurich's Combined Reply Brief in Support of Its Motion for Leave to File an Amended Answer and Affirmative Defenses and Rule 12(c), (h)(2)(B) Motion to Dismiss, dated October 12, 2018;

62. Supplemental Affidavit of Paris B. Glazer, dated October 12, 2018;

63. Plaintiff's Motion for Leave to File Supplemental Authority, dated January 23, 2019;

64. Zurich's Response Brief in Opposition to Plaintiff's Motion for Leave to File Supplemental Authority, dated February 12, 2019;

65. Order Denying Zurich's Motion for Leave to File an Amended Answer, dated August 28, 2019;

66. Report and Recommendation Regarding Defendants' Motion to Dismiss, dated August 28, 2019;

67. Second Amended Complaint, dated July 15, 2021;

68. Defendants J. Crisman Palmer and Gunderson, Palmer, Nelson & Ashmore, LLP's Answer to Plaintiff's Second Amended Complaint, dated July 28, 2021;

69. Defendants' Responses and Objections to Requests for Admission Directed to Defendants J. Crisman Palmer and Gunderson, Palmer, Nelson & Ashmore, LLP, dated August 27, 2021;

70. Defendants' Responses and Objections to Plaintiff's First Set of Interrogatories Directed to Defendants, dated August 27, 2021;

71. Defendants' Responses and Objections to Plaintiff's Second Set of Interrogatories to Defendants, dated May 13, 2022;

72. Defendants' Responses and Objections to Plaintiff's Second Set of Requests for Admissions to Defendants, dated May 13, 2022;

73. Transcript of August 31, 2022 Deposition of J. Crisman Palmer with exhibits;

74. Transcript of September 1, 2022 Deposition of Michael Abourezk with exhibits;

75. Various invoices from Gunderson, Palmer, Nelson & Ashmore, LLP;

76. Various invoices from Hinshaw & Culbertson LLP;

77. Various invoices from Bangs McCullen Law Firm;

Scott R. Hoyt
September 30, 2022
Page 6

78. Undated chronology of underlying case; and

79. The ethical rules and authorities cited in this Declaration.

## KEY FACTS

It is appropriate for expert witnesses to rely on facts for which there is appreciable support in the record. Accordingly, to the extent that my opinions are based on facts, it is my understanding that those facts are or will be supported by competent evidence in this litigation.

Based upon my review of the documents listed above, I have identified and relied upon the following facts:

1. In August 2007, Joseph Leichtnam was injured during the course of his employment with Rommesmo Companies dba Dakota Steel & Supply, Inc. ("Rommesmo").

2. AZIC had issued a workers' compensation policy to Rommesmo.

3. AZIC paid medical expenses and provided some disability benefits before discontinuing payments in 2009.

4. After Leichtnam brought claims against AZIC and Rommesmo before the South Dakota Department of Labor's Division of Labor and Management, Leichtnam reached a settlement with AZIC and Rommesmo.

5. The settlement was documented in a settlement agreement and release, and the Department of Labor approved the settlement in June 2013. The settlement agreement released all existing or future claims except claims for future or outstanding medical expenses, leaving unclear whether the release encompassed all or most of the damages asserted in the subsequent bad faith action.

6. On February 27, 2015, Leichtnam sued AZIC, alleging the bad-faith denial of benefits for his workers' compensation claim.

7. AZIC retained Palmer and GPNA to defend it in the action. Palmer was the primary attorney working on the matter, communicating with AZIC and opposing counsel, and making litigation decisions.

8. Palmer filed an Answer for AZIC on April 30, 2015.

9. In the Answer, Palmer did not assert any affirmative defenses, and the court-ordered deadline for amendment of the pleadings passed on August 31, 2015.

10. Palmer mistakenly admitted in the Answer that AZIC and the other defendants "either committed or aided and abetted the acts hereinafter alleged." When asked

at deposition to confirm that such a mistake was "remarkable," Palmer answered, "Probably." *See* Palmer Depo. at 29:19-30:12.

11. Palmer never provided a draft of the Answer to Dawn Wagner, AZIC's in-house counsel, before filing it, and as a result, she did not see the mistaken admission and lack of affirmative defenses. *See id.* at 26:13-20. Given the number of files she was monitoring, when she received an Answer, she assumed she had already previously received it and approved it before it was filed.

12. Palmer testified that despite asking for two extensions of the deadline to file an Answer, his firm's billings did not reflect any research into possible defenses before the filing. *See id.* at 22:14-22.

13. During the years following the Answer, Palmer appears to have failed to conduct his own investigation of the file received from AZIC, serve any discovery, or timely provide information requested by Wagner so that she could evaluate the case and properly assess settlement options. For example:

    a. Palmer testified that he could not recall providing to AZIC a report describing the allegations and claims and identifying likely issues within 30 days of retention, as required by AZIC's guidelines. *See id.* at 14:13-15.

    b. Palmer could not recall providing to AZIC an identification and assessment of key issues and likelihood of success within 90 days of retention, as required by AZIC's guidelines. *See id.* at 15:13-16.

    c. Palmer could not recall providing to AZIC a litigation plan, as required by AZIC's guidelines. *See id.* at 15:18-16:4.

    d. Palmer admitted in his deposition that his paralegal, instead of him, reviewed the file and was simply instructed to summarize the documents for him. *See id.* at 18:19-19:6.

    e. Palmer failed to serve any written discovery requests or notice any depositions.

    f. Palmer admitted that he did not consider that a deposition of Leichtnam could be used to challenge Leichtnam's credibility or malingering. *See id.* at 68:6-19.

    g. Palmer testified that he took no discovery regarding Leichtnam's prior injuries or gaps in treatment. *See id.* at 73:7-74:24.

    h. Palmer admitted that he took no discovery to address Leichtnam's alleged damages. *See id.* at 83:10-17.

Scott R. Hoyt
September 30, 2022
Page 8

        i.    Although Wagner asked Palmer when depositions would occur, Palmer never told her that he did not intend to take any depositions. *See id.* at 93:2-94:4.

        j.    For months, Wagner repeatedly had to ask for information from Palmer to evaluate AZIC's exposure and understand the status of discovery. *See, e.g.*, December 7, 2017 email ("I also hope that you can provide me with an update on plaintiff's answers to discovery and what depositions you plan on taking in order to support our defenses in this case."); January 4, 2018 email ("I would like for you to provide an outline re: your defense strategy going forward with regard to our discovery requests, key witnesses, etc. I do not believe I have copies of plaintiff's answers to discovery (please send me copies) and I would like to know when you plan on deposing the plaintiff and/or conducting additional investigation into his medical history."); Palmer Depo. at 71:7-15 ("I don't have a reason" why he still had not provided his initial evaluation for an early resolution three months after Wagner's request).

        k.    Palmer never told Wagner that he had already concluded that there would be a finding of bad faith, to which Zurich had no defenses, preventing her from using that conclusion in her analysis or deciding whether to change counsel. *See id.* at 73:7-18.

14.    On September 14, 2015, Plaintiff's counsel made an offer to settle the case for $325,000. Plaintiff's counsel made clear that their offers would only increase absent an early settlement.

15.    Although Palmer told Wagner that settlement would be beneficial and recommended a mediation (Wagner agreed an early resolution/mediation would be helpful), Wagner continued to state that, absent additional information from Palmer, she could not evaluate the strengths and weaknesses of AZIC's position and properly consider settlement options. *See, e.g.*, December 15, 2015 email ("[Y]ou recall towards the end of September I requested an initial evaluation of this matter so that we could explore the possibility of an early resolution. I am still awaiting your assessment in this regard. Please advise when you would like to discuss this matter . . . .")

16.    Palmer's delays continued. In letters sent to Wagner on December 23, 2015 and February 1, 2016, Palmer discussed some of the case's weaknesses and encouraged settlement given the cost of discovery and the strong reputation of Plaintiff's counsel. Yet he did not describe or analyze AZIC's defenses or evidentiary support for its position. *See* January 6, 2016 email ("I have reviewed your letter dated 12/23/15 which contained a high level analysis of this matter . . . . Unfortunately, I need a more in depth analysis from you which would hopefully contain the following information . . . .")

Scott R. Hoyt
September 30, 2022
Page 9

17. In February 2016, Wagner suggested that Palmer try to schedule a mediation. *See* February 25, 2016 email ("While I am still awaiting conformation [sic] of the final amount, we can probably reach out and try to get something scheduled.").

18. A mediation did not occur until September 2016, at which time Plaintiff's demand had increased from $325,000 to $2 million. Palmer did nothing prior to mediation to advise Wagner what Plaintiff's current demand was, and Wagner was unprepared for Plaintiff's mediation demand.

19. In 2018, AZIC decided to retain Hinshaw Culbertson ("Hinshaw") as primary counsel in the suit.

20. Because AZIC had not disclosed any affirmative defenses, Hinshaw moved to amend the Answer to add defenses that Palmer had either not considered or rejected, including defenses for failure to exhaust administrative remedies, failure to participate in a Department of Labor hearing, res judicata and release based on the settlement agreement, and the statute of limitations. Palmer, still formally co-counsel with Hinshaw at that time, signed off on the motion, necessarily agreeing on its merit.

21. Assertion of those defenses, however, was three years too late, and the court denied the motion, explaining that "woefully absent is any explanation for the delay of three years in bringing the motion." The court also denied a motion to dismiss based on res judicata and the release, finding those grounds waived by failure to plead them as affirmative defenses.

22. AZIC ultimately settled the case for $2 million.

## LEGAL PRINCIPLES AND ANALYSIS

I assume for purposes of this report that South Dakota's law and ethical rules govern Palmer's conduct. The ethical rules require an attorney to competently represent a client and act with the requisite "thoroughness and preparation." *See* South Dakota Rules of Professional Conduct (hereinafter "ER") 1.1 ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."). The ethical rules also impose requirements for reasonable and timely communication with a client. They provide that a lawyer must "[r]easonably consult with the client about the means by which the client's objectives are to be accomplished" and "[k]eep the client reasonably informed about the status of the matter." ER 1.4(a)(2), (3). In addition, a lawyer must "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." ER 1.4(b).

The ethical rules are not intended to provide a basis for civil liability, but they may be considered by the fact finder in determining whether the conduct at issue satisfied the appropriate standard of care. *See* South Dakota Rules of Professional Conduct, Scope ("[S]ince the Rules do

Scott R. Hoyt
September 30, 2022
Page 10

establish standards of conduct by lawyers, a lawyer's violation of a Rule may be evidence of breach of the applicable standard of conduct."); *see also Restatement (Third) of the Law Governing Lawyers* § 52(2) (violation of rule does not give rise to implied cause of action, but may be considered as aid in understanding standard of care).

Based upon my review of the documents and testimony in the record, I believe that Palmer violated the ethical rules and the duties to AZIC implicated by those rules and fell below the applicable standard of care. Palmer violated ER 1.1 by failing to conduct a thorough, timely review of the evidence to evaluate the facts, competently prepare AZIC's defenses, and analyze litigation and settlement strategy. As a result, he was unable or unwilling to prepare a theory of defense and communicate with AZIC regarding the best course of action.

Palmer's failure to timely and thoroughly review the documents and understand the facts led to untimely and misguided advice regarding settlement and violations of ER 1.4. Without knowing the weaknesses of AZIC's case and advising his clients about those weaknesses, Palmer could not and did not provide AZIC with the information needed to enable it to negotiate a more favorable settlement at the earliest possible time. The inexcusable delay in reviewing the file and lack of diligence in discussing strategy with Wagner meant that Palmer was unprepared to properly evaluate the initial settlement offer, which could have decreased AZIC's eventual payment by more than $1.5 million.

In my opinion, Palmer's actions constituted professional negligence and departed from the applicable standard of care. The evidence further shows that those actions harmed AZIC's litigation strategy and settlement position and caused AZIC to incur significant losses, as well as unnecessary legal fees and costs.

Sincerely,

Colin F. Campbell

CFC/klm
9628827