1

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

AMERICAN ZURICH INSURANCE
COMPANY and ZURICH AMERICAN
INSURANCE COMPANY,

     Plaintiffs,

vs.                                              Case No. 20-cv-5026

J. CRISMAN PALMER and GUNDERSON,
PALMER, NELSON & ASHMORE, LLP,

     Defendants.

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

Deposition via Zoom of:  JACK H. HIEB
                   Date:  December 19, 2022
                   Time:  12:01 p.m.

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

APPEARANCES

Scott R. Hoyt
Pia Hoyt, LLC
Salt Lake City, Utah

    Attorney for the Plaintiffs

Jason R. Sutton
Boyce Law Firm, LLP
Sioux Falls, South Dakota

    Attorney for the Defendants

ALSO PRESENT:    Colin F. Campbell

REPORTED BY:     Audrey M. Barbush, RPR

**EXHIBIT 3**

9

| | | |
|---|---|---|
| 1 | | definitely the lead attorney there.  In another, I |
| 2 | | would say it was 50/50, probably, and probably a |
| 3 | | similar role in the third one that I can think of. |
| 4 | Q | Did those go to verdict? |
| 5 | A | Yes. |
| 6 | Q | Were they jury trials? |
| 7 | A | Yes. |
| 8 | Q | Were any of those against Michael Abourezk? |
| 9 | A | None of those were against Michael Abourezk, although |
| 10 | | Michael had a fairly significant role in the one.  He |
| 11 | | attended the entire trial and was acting as what I |
| 12 | | would call co-counsel for the lead attorney for the |
| 13 | | plaintiff in that case. |
| 14 | Q | Were you representing a defendant? |
| 15 | A | I was. |
| 16 | Q | What was the style, the title of that case? |
| 17 | A | It was Anna Fair, F-a-i-r, vs. Sedgwick, and there were |
| 18 | | other -- well, Sedgwick and Nash Finch.  There was one |
| 19 | | other defendant on the caption, and it was an insurance |
| 20 | | company.  They settled out prior to the trial, if I |
| 21 | | recall correctly, and I can't remember what the name of |
| 22 | | that carrier was. |
| 23 | Q | Did Abourezk get a verdict in that case? |
| 24 | A | I got a defense verdict in that case.  And to be clear, |
| 25 | | Mike was involved.  I do not believe he was listed as |

10

1    counsel at the time of trial.  I just recall him being
2    there for the entire trial and caucusing with
3    plaintiffs counsel during every break and what have
4    you.
5 Q  Is that the one case you describe in your report where
6    Abourezk was co-counsel?
7 A  No.  Mike was my co-counsel in a case that we
8    co-plaintiffed, a bad faith case.
9 Q  And so was the case that we just talked about the one
10   that you list as against Abourezk?
11 A No.  That was not a bad faith case.  That case that I
12   tried against Mike was actually, if I recall correctly,
13   a -- it was more of a personal injury case.
14 Q You talked about, in your bio, experience in numerous
15   instances with settlements with Michael Abourezk.  How
16   many cases have you been involved with Abourezk where
17   you were negotiating settlement or pursuing settlement?
18 A I don't have an exact number on that.
19 Q So when you say "numerous," you really can't recall how
20   many?
21 A I can't.  I don't have a specific number.
22 Q How many mediations have you had with him?
23 A Once again, I don't know the exact number.  Not very
24   many.  I can recall being involved with Mike in at
25   least one mediation.  There may have been more.

1  Q    We'll go over some things in your report.  Let's mark
2       as 114 the report.
3            (Exhibit 114 is marked for identification.)
4  BY MR. HOYT:
5  Q    If you go to page 17 of that report.
6  A    Let me get it out here.
7            Okay.  I'm there.
8  Q    In talking about your response to the opinions of Colin
9       Campbell, in the first paragraph under that title, you
10      mention "he never cites any South Dakota law in his
11      opinion," and yet you go on below to note that he cites
12      the South Dakota Ethical Rules 1.1 and 1.4.  That would
13      be South Dakota law, correct?
14 A    Yeah.  To the extent that South Dakota's codified the
15      model rules, yes.
16 Q    Well, you yourself note in the indented paragraph there
17      that local rules and practices are relevant to the
18      claimed breach of duty.  You agree with that.
19 A    They're relevant, yes.
20 Q    And you would agree that Ethical Rule 1.4 requires an
21      attorney to keep the client thoroughly informed about
22      the status of the matter and to reasonably consult with
23      the client about the means by which the client's
24      objectives are to be accomplished.
25           MR. SUTTON:  Object to the form.  It's ambiguous

1           as to whether it's a South Dakota version of the rule
2           or the model rule.
3   BY MR. HOYT:
4   Q   Well, I'm quoting from the actual 1.1 and 1.4.
5   A   I would generally agree with that.  I don't have the
6       rule in front of me, but that sounds accurate.
7   Q   You saw that Palmer had Zurich's guidelines to outside
8       counsel, correct?
9   A   Yes.
10  Q   And you would agree those guidelines would set forth
11      what Zurich's objectives were or expectations of
12      counsel.
13  A   I can't say that it necessarily provided Palmer all of
14      those objectives, but, yeah, I saw where it laid out
15      generally, like most insurance companies do, what their
16      objectives were in the defense of the matter.
17  Q   They also set out some of the means by which they
18      expected those objectives to be met, correct?
19  A   I recall that.
20  Q   They also set out how Zurich expected counsel to
21      consult and when they were provided certain reports.
22  A   Yeah, I saw things in there that indicated what kind of
23      reports they would like to see.
24  Q   One of those guidelines or expectations set out was a
25      required case evaluation within specific time frames,

18

1  went over, an attorney has to fully inform the client
2  of his plans for the conduct of the case to meet the
3  expectations of the client.
4          MR. SUTTON:  Object to the form.  "Ethical rules"
5  is vague.
6          THE WITNESS:  Yeah, I -- which rule are you
7  talking about?
8  BY MR. HOYT:
9  Q  Well, let's put aside the rules.  Does the standard of
10    care in South Dakota require an attorney to fully
11    inform his client of his plans to conduct the defense
12    of the matter to meet the client's expectations?
13 A  I don't believe so.
14 Q  What part of that do you disagree with?
15 A  I mean, I defend cases or plaintiff cases all the time
16    where I don't sit down and provide my client with a
17    laundry list of all of the things that I think I might
18    do at some point to either defend or prosecute the
19    case.  I don't think I have an ethical obligation to
20    provide that.
21 Q  If a client's asked you to conduct discovery and you
22    don't plan to, do you think you need to inform the
23    client of that?
24 A  If a client is specifically asking me to do something
25    in the nature of discovery and I think it's a bad idea

**EXHIBIT 3**

19

1	or don't want to do it, yes, I think I have an
2	obligation to tell them "I think that's a bad idea.
3	I'm not going to do it.  Here's why."
4	Q	Did Palmer ever tell Wagner why he intended to take no
5	discovery?
6	A	I don't know that it came up in that context.
7	Q	Let's look at the complaint, the underlying complaint
8		that Palmer was defending.  We'll mark that as
9		Exhibit --
10		     MR. SUTTON:  This has already been marked as
11		Exhibit 2.
12		     MR. HOYT:  Exhibit 2, okay.
13		     THE WITNESS:  I think I brought a comprehensive
14		set of the prior exhibits, so I'll see if I can find it
15		here.  Hold on.
16		     MR. SUTTON:  Jack, it's also in what I sent you
17		last week.
18		     THE WITNESS:  Yeah, but those were marked 1
19		through whatever.
20		     MR. SUTTON:  But if you look at the actual
21		document, it's got the exhibit sticker number.
22		     THE WITNESS:  Yep.  I've got Exhibit 2 in front of
23		me.  I've got a copy of it.
24		     MR. HOYT:  All right.  And I'm going to mark -- I
25		think the answer's already been marked, too, Jason.

**EXHIBIT 3**

| | | |
|---|---|---|
| 1 | A | Ask that question again. |
| 2 | Q | If, as you say here, it's a fact that Abourezk |
| 3 | | generally will not agree to mediate and, if he does, |
| 4 | | the number's going to go up, shouldn't Palmer have told |
| 5 | | Wagner that when she suggested mediation, that, "Well, |
| 6 | | first of all, he probably won't agree to mediate; |
| 7 | | secondly, if he does, you're not going to get that |
| 8 | | $325,000 offer"? |
| 9 | A | This is my experience with Mike.  I don't know if it's |
| 10 | | been Cris's.  So whether he informs her of that would |
| 11 | | depend upon his experience, I guess. |
| 12 | Q | Well, you preface that statement in this report by |
| 13 | | "Palmer gave Wagner exactly the advice that an |
| 14 | | experienced bad faith defense attorney in South Dakota |
| 15 | | should have given her." |
| 16 | | So apparently you -- your opinion is that any good |
| 17 | | bad faith defense attorney in South Dakota would know |
| 18 | | that, generally, Abourezk won't agree to mediate and, |
| 19 | | if he does, the number's going to go up. |
| 20 | | MR. SUTTON:  Object to the form.  That's compound. |
| 21 | | THE WITNESS:  Yeah, I don't -- I don't necessarily |
| 22 | | agree with that.  I believe Cris gave her the |
| 23 | | information any experienced bad faith lawyer would give |
| 24 | | her as it related to Mike's settlement overture. |
| 25 | | |