UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| AMERICAN ZURICH INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>　　　　Plaintiffs,<br>　v.<br><br>J. CRISMAN PALMER and GUNDERSON, PALMER, NELSON & ASHMORE, LLP,<br><br>　　　　Defendants. | Case No. 5:20-cv-05026-KES<br><br><br>PLAINTIFFS' OPPOSITION TO ATTORNEY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Plaintiffs American Zurich Insurance Company and Zurich American Insurance Company (collectively "*Plaintiffs*" or "*Zurich*") submit this Opposition to Attorney Defendants, J. Crisman Palmer and Gunderson, Palmer, Nelson & Ashmore, LLP's (collectively "*Defendants*" or "*Palmer*") Motion for Summary Judgment [Dkt. 50] and Brief in Support of Motion for Summary Judgment [Dkt. 51] ("*MSJ*").

## I. INTRODUCTION

### A.   SUMMARY OF ARGUMENTS

Palmer's MSJ based on its arguments under the statute of repose, failure to provide admissible expert testimony on the standard of care and breach of fiduciary duty, fails to overcome the material issues of fact that survive these arguments.

**1.   Palmer Misapplies the Statute of Repose.**

Under SDCL 15-2-14.2, the three-year statute runs from the last act or omission of malpractice, not the first act or omission, which is the focus of Palmers' MSJ. And where as here, the first acts or omissions tortiously continue i.e., Mr. Palmer admitted concealment of material facts including his intent to disobey the client's guidelines and requests for discovery

- 1 -

and his conclusion no defenses were meritorious, up to and including his filing of a motion in 2019 to add them. The statute did not run until such misconduct ended well within the three years before Zurich filed its complaint. Further, Palmer selectively picks only some of Palmer's acts/omissions to focus on, claiming they are the only ones Zurich's expert gave causation opinion on. However, even if true – its not – expert opinion on causation is not required.

### 2. Zurich's Expert Testified to the South Dakota Standard of Care and its Breach.

Palmer claims a local standard of care applies without explaining how it differs from that testified to by Zurich's expert. First, Palmer is mistaken as it is a state standard not a more local "circumstances" standard – Palmer attempts to limit it to the practices of the single underlying plaintiff's attorney and even then fails to explain how they modify the state standards. Second, Zurich's expert testified the state standard is the same as the ABA model rules it is patterned after with which he is well familiar, having been a presiding judge in the largest county in Arizona for twenty-five years and chairing the Arizona Bar's Committee on Judicial Ethics. Finally, Palmer's MSJ on this point is a premature and inappropriate thinly disguised motion *in limine*.

### 3. Zurich's Expert Testified to Acts and Omissions which Breached Palmer's Fiduciary Duty and there is ample Evidence of the Breach.

Zurich's expert testified to acts and omissions of Palmer's breach of fiduciary duty, including Palmer concealing his intent to take no discovery despite the client's request, as well as his determination there were no meritorious defenses but again failing to disclose and instead signing belated motions to amend to add defenses and dismiss based on them. Such concealment clearly breached Palmer's duty of loyalty to faithfully carry out the client's wishes. And expert testimony is not necessary to assist the jury in deciding whether Palmer misled or deceived Zurich.

## II.     STATEMENT OF FACTS

Palmer cherry picks the facts of Palmer's early acts and omissions of failing to properly inform Zurich (Dawn Wagner ("**Wagner**") his Zurich contact) to enable her to take advantage of a $325,000 settlement offer by not timely setting up a mediation to capitalize on it. Palmer also cherry picks Zurich's expert Colin Campbell's opinion that these acts and omissions breached the standard of care. Palmer does so to try and convince the Court that because these particular acts and omissions occurred over three years before Zurich filed this suit, it is barred by the statute of repose. However, Palmer ignores the following undisputed facts showing these and other acts and omissions by Palmer continued well into 2018-2019 and within three years of the filing of the complaint here.

### A.     FACTS SHOWING PALMER'S DISOBEDIENCE OF AND CONCEALMENT OF HIS INTENT TO DISOBEY ZURICH'S REEQUESTS FOR LITIGATION PLAN, DISCOVERY AND DEFENSES CONTINUED THROUGH 2018

Palmer testified in his deposition to the following:

1.     He had Zurich's litigation guidelines, Exhibit 1 to his deposition (the 8/31/2022 Palmer deposition ("**Palmer Depo**.") excerpts referred to herein are attached as Exhibit 1 to the Declaration of Scott R. Hoyt ("**Hoyt Decl.**"), filed concurrently herewith, and the selected pages are in numeric order with the key testimony highlighted). [Palmer Depo. at 11:24-25 – 12:1-18, Hoyt Decl. Ex. 1]

2.     He knew they set forth what Zurich expected of him in defending the case. [*Id.*]

3.     These included providing Zurich with a litigation plan including discovery, motions and significant activity. [Palmer Depo. at 15:13-25-16:1-4, Hoyt Decl. Ex. 1]

4.     Not only did Palmer fail to provide such a plan with these details by the required dates, 30 and 90 days after receiving the case [*Id.*], this omission continued throughout his work

on it up to and including January 4, 2018 when Wagner again asked for his litigation plan – "outline on your defense strategy going forward with regard to our discovery requests" and when he planned on deposing the plaintiff. [Palmer Depo. at 89:22-25 – 90:1-22, Hoyt Decl. Ex. 1].

5. Not only did Palmer never provide such a plan, though he was on the case into 2019, he also never propounded any discovery and never took the plaintiff's deposition [Palmer Depo. at 55:13-15, Hoyt Decl. Ex. 1].

6. Palmer admits he never planned on doing any discovery or taking plaintiff's deposition [Palmer Depo. at 90:14-17, Hoyt Decl. Ex. 1]. Yet, he never informed Wagner/Zurich of this despite her repeated requests that he do so in order to inform her for settlement and defense decisions on the case. [Palmer Depo. at 90:18-25 – 91:1-3, Hoyt Decl. Ex. 1]. Palmer knew she needed this discovery to pursue settlement. [*Id.*]

7. Instead, Palmer misled Wagner. When she asked in a February 27, 2017 email "Have we taken the plaintiff's deposition yet? What is the deadline for oral discovery completion?" Palmer's response wasn't forthrightly i.e. "no and I don't intend to," but rather he responded: "We have not taken depo. Discovery deadline is 7-19."  Though he admits he knew the deposition was important to Wagner's decision making in the case, he had already decided to never take it. [Palmer Depo. at 91:3-17, 20-25 - 92:1-12, Depo. Ex. 31, Hoyt Decl. Ex. 1].

8. Through his involvement in the case up to 2019, Palmer never took the plaintiff's deposition and concealed his intent from the outset not to do so despite repeated requests by Wagner/Zurich that he take it. [*Id.*]

9. Palmer admits that by taking that deposition he could have challenged plaintiff's credibility, his claimed damages and even explored whether he had been malingering. [Palmer Depo. at 68:7-20; 83:13-18, Hoyt Decl. Ex. 1].

10. Nor did Palmer through 2018 or thereafter ever interview the Zurich claim representatives that handled the underlying claim to get their version of the claim [Palmer Depo. at 77:3-6, 15-24, Hoyt Decl. Ex. 1].

11. Palmer failed to take any discovery, develop defenses or advise Wagner he had decided to take no discovery and had concluded there were no meritorious defenses, through 2018, though Wagner told him she would need the discovery and his evaluation of the defense in order to seek authority to settle. [Palmer Depo. at 69:23-25 – 70:1-6, 9, Hoyt Decl. Ex. 1].

12. Zurich's expert Colin Campbell opined that "through the years following the answer Palmer appears to have failed to conduct his own investigation of the file … serve any discovery or timely provide information requested by Wagner so that she could evaluate the case and properly assess settlement options. For example: … e. Palmer failed to serve any written discovery requests or notice any depositions … j. Although Wagner asked Palmer when depositions would occur, Palmer never told her that he did not intend to take any depositions … k. Palmer never told Wagner that he had already concluded that there would be a finding of bad faith …" [Colin Campbell's Expert Report, attached as Exhibit 2 to Hoyt Decl.].

13. Mr. Campbell confirmed the opinions in his report in his deposition, including that the acts and omissions outlined in No. 12 above, failed to meet the standard of care. [Campbell Depo. at 22:9-25 – 23:1-9. (Referenced excerpts to 12/19/2022 Campbell deposition are attached as Exhibit 3 to Hoyt Decl. with pages in numeric order and key portions highlighted)]. Campbell testified that as "one example … he had instructions from his client of what his client wanted him to do, none of which he did." [Campbell Depo. at 25:18-21, Hoyt Decl. Ex. 3].

14. Campbell testified to acts and omissions by Palmer after the mediation that failed to meet the standard of care, including failing to inform the client on affirmative defenses and failure to take discovery [Campbell Depo. at 37:17-25 – 38:1-13, Hoyt Decl. Ex. 3].

15. Campbell also testified that Palmer's failure to evaluate and discuss defenses with Zurich/Wagner failed to meet the standard of care. [Campbell Depo. at 41:2-17, Hoyt Decl. Ex. 3].

16. Palmer's expert, Jack Hieb, admits that where the client has asked for discovery and the attorney is not going to do it, he/she needs to inform the client of this. [Jack Heib Depo. at 18:21-25 – 19:1-6. (Referenced excerpts to the 12/19/2022 Heib deposition are attached as Exhibit 4 to Hoyt Decl. with pages in numeric order and key testimony highlighted)]. Yet Palmer never told Wagner of his intent not to.

**B. FACTS SHOWING PALMER FAILED THROUGH 2018 TO RESEARCH DEFENSES, CONCEALED HE HAD CONCLUDED THERE WERE NONE, YET IN 2018 HE SIGNED MOTIONS TO AMEND AND DISMISS TO ADD DEFENSES VERIFYING THEY WERE MERITORIOUS DEFENSES.**

1. Palmer admits: he never researched potential defenses [Palmer Depo. at 23:2-5, 19-25 – 24:1-4, Hoyt Decl. Ex. 1]; he filed an answer without any affirmative defenses [*Id.* at 25:11-18, 21, Hoyt Decl. Ex. 1]; he had decided without research and without telling Wagner/Zurich that there were no meritorious defenses [Palmer Depo. at 43:22-25 – 44:1-5, Hoyt Decl. Ex. 1; and Palmer's Responses to Zurich's Second Set of Requests for Admission, Admission No. 45, attached as Exhibit 5 to Hoyt Decl.]; and yet on September 7, 2018, Palmer signed Zurich's Motion to File an Amended Answer to add affirmative defenses [attached as Exhibit 6 to Hoyt Decl., and Palmer Depo. at 49:13-21 and Depo. Exhibit 10, Hoyt Decl. Ex. 1].

2. Palmer did not, after reviewing the motion, advise Zurich or its associated counsel, Hinshaw & Culbertson, that he found no merit to the defenses. [Palmer Depo. at 56:12-

25 – 57:1-10, 18-21, Hoyt Decl. Ex. 1]. And he knew that under Federal Rule 11, by signing the motion he was representing to the Court there was a good faith basis for the motion and the defenses. [*Id.*].

3. The Court denied the motion as untimely because Palmer had missed the deadline for amending. [Palmer Depo. at 62:7-14, Hoyt Decl. Ex. 1].

4. In his expert report, Campbell notes Palmer's failure "to conduct a thorough, timely review of the evidence to evaluate the facts, competently prepare AZIC's [Zurich] defenses, and analyze litigation and settlement strategy … [and that] he was unable or unwilling to prepare a theory of defense and communicate with AZIC regarding the best course of action" fell below the standard of care [Campbell Report at p. 10, Hoyt Decl. Ex. 2]. As supporting facts Campbell referred to Palmer's failure to present any defenses, and when he moved to add them by motion, they were ruled three years late by the Court which held "woefully absent is any explanation for the delay of three years in bringing the motion." [Campbell Report at p. 9, ¶ 21, Hoyt Decl. Ex. 2]. At his deposition, Campbell testified the items referred to above in his report present, in his opinion "an accurate chronological outline of the case." [Campbell Depo. at 24:19-25, Hoyt Decl. Ex. 3]. And he reiterated that after the mediation, "the whole issue of affirmative defenses which are eventually -- as some of them are determined waived… violates the standard of care …" [Campbell Depo. 37:17-25, Hoyt Decl. Ex. 3].

5. In filing the answer, Palmer also failed to deny, but rather, without consulting Zurich, admitted three Zurich named entities – two of which were not involved with the claim, were alter egos of each other and aided and abetted in the alleged bad faith. [Palmer Depo. at 29:14-24 – 30:3-5, 8-12, Hoyt Decl. Ex. 1]. He admits this was "remarkable" [*id.*] and Palmer's expert Hieb admits he would not have made these admissions unless the client approved doing so. [Hieb Depo. at 20:23-25 – 21:1-5, 7, 17-21, Hoyt Decl. Ex. 4]. Hieb was unable to deny that

doing so increased the exposure by exposing the assets of more than one company. [Hieb Depo. at 21:22-25 – 22:8-12, Hoyt Decl. Ex. 4]. Finally, he admitted Palmer should have made a timely motion to amend the answer to correct this. [Hieb Depo. at 24:6-12, Hoyt Decl. Ex. 4]. Yet as noted above, Palmer failed to do so until September 2018 and then it was ruled untimely.

### C. FACTS SHOWING ZURICH'S EXPERT, CAMPBELL, APPLIED THE CORRECT STANDARD AND IS QUALIFIED TO DO SO

Campbell relied on South Dakota Rules of Professional Conduct 1.1, 1.4(a)(2), 3 and 1.4(b). [Campbell Report, p. 10, Hoyt Decl. Ex. 2]. And he testified that from his 45 years of practice, including chairing the Arizona State Bar's Ethics Committee and as a judge and teacher of judicial ethics, he was "not aware of any substantial difference with respect to the standard of care rules … between South Dakota and the rest of the country." [Campbell Depo. at 20:22-25 – 21:1-20, Hoyt Decl. Ex. 1]. Nor has Palmer explained how they differ. Instead, his expert Hieb, without foundation, speculates about the peculiar practices of the underlying plaintiff attorney, Michael Abourezk. The practices of a single attorney are not a "standard," and Palmer fails to explain how they would modify or supersede the state standards.

### D. FACTS SHOWING PALMER BREACHED HIS FIDUCIARY DUTY

As set forth in paragraphs A. 1-16 above, Palmer not only failed to provide Zurich with requested information and willfully disobeyed requests for discovery, he also concealed his intent to not provide the information or take discovery. And Zurich's expert, Campbell, in his report and testimony opined this violated his duties to Zurich. [Campbell's Expert Report, Hoyt Decl. Ex. 2 at ¶¶ e. – j.; and Campbell Depo. at 22:9-25 – 23:1-9; 25:18-21, Hoyt Decl. Ex. 3].

### III. ARGUMENT

#### A. PALMER'S ACTS AND OMISSINS OF MALPRACTICE CONTINUED INTO 2018, WELL WITHIN THE THREE YEAR STATUTE OF REPOSE

Palmer selects acts and omissions he claims occurred before the mediation in 2016 and argues SDCL 15-2-14.2 bars Zurich's case because it was filed April 20, 2020, past the three year bar of the statute. What Palmer ignores is the case law holding the statute, "is measured from the last culpable act or omission of defendant." *Zoss v. Protsch*, (U.S.D.C. S.D. April 8, 2021) Dist. LEXIS 68091[1] citing *Pitt-Hart v. Sanford, USD Medical Center* 878 N.W. 2d 406, 473 (S.D. 2016). As shown above, Palmer's omissions – failure to research defenses, assert defenses, provide a litigation plan, take discovery, disclose he did not intend to take discovery including the plaintiff's deposition despite repeated client requests he do so - continued through 2018 when he signed a motion to try and add defenses he had failed to timely present before that. Indeed it was not until his deposition here that he disclosed he had never intended to do those things but rather had concealed this from Zurich. Whether viewed as discrete acts and omissions occurring up to 2018, or as continuous related tortious conduct i.e., concealment, the last acts or omissions by Palmer did not occur until at the earliest 2018, well within the three year statute. *See e.g. Zoss, supra*.

In *Zoss*, a legal malpractice case, the court reviewed the South Dakota Supreme Court's decision in *Robinson-Bodell v. Harmelink, Fox & Ravensberg Law Office*, 939 N.W. 2d 32, 40 (S.D. 2020) that held SDCL § 15-2-14.2 is a statute of repose that runs three years from the "error, mistake, or omission." The court noted that the three years are measured from the "last culpable act or omission" and will not begin to run where there is a continuous wrong or

---

[1] A copy of this decision is attached as Appendix A to this Opposition for the Court's convenience.

- 9 -

"unbroken course of negligent treatment" (citing a medical malpractice case *Pitt-Hart v. Sanford, USD Medical Center* 878 N.W. 2d 406, 473 (S.D. 2016)). Applying this, the court held although there were alleged acts of malpractice in preparing documents for a transaction over three years before the legal malpractice action was filed, further acts and omissions in filing the defective documents occurred later within the three years and thus the complaint was not barred. The court reasoned these acts were a continuous transaction/occurrence, *Id.* at 7. The court held "the filing of the documents in early January 2018 was part of the transaction, meaning the 'occurrence' was not concluded on December 30, 2017." *Id.*

The court also noted another basis, applicable here, making the statute of repose inapplicable. Citing *Robinson-Podell, supra*, the court in *Zoss* noted "a lawyer has a professional duty of care in South Dakota to notify a client of an act, error or omission that is reasonably expected to be the basis of a malpractice claim." *Robinson-Podell, supra* 939 N.W. 2d at 46. The court in *Zoss* noted a failure to do this is distinct and "ongoing tortious conduct" that is "one continuous wrong." *Zoss, supra* at 7.

It is undisputed here Palmer never notified Zurich of his acts, errors or omissions in failing to timely: research and assert defenses; correct the mistaken admission in the answer of aiding, abetting bad faith and alter ego; concealing his intent to disobey Wagner's/Zurich's guidelines and requests for a litigation plan, defenses and discovery; and failure to timely pursue settlement through mediation or otherwise, all as admitted by Palmer and testified to by Zurich's expert. These acts and omissions continued through the full course of Palmer's representation into 2019.

Palmer focuses on his early acts and omissions in missing a settlement opportunity and Campbell's testimony on their cause of damage in paying a higher price to settle later. He argues since Campbell offered no opinion on causation from later continuing acts and omissions they

cannot be considered. However, the statute does not run from the date of damages, and expert opinion on causation is not necessary and likely is not even proper. *See e.g. Leibel v. Johnson* 728 S.E. 2d 554, 556 (Ga. 2012).

In *Leibel*, the Georgia Supreme Court held expert testimony on causation is improper as it is for the jury to decide causation on the facts and evidence. The court noted that although expert opinion is necessary on the standard of care and breach of it, "[t]his does not mean, however, that expert testimony would also be appropriate with respect to the third and final element of the test, causation." *Id.* The court added that based on expert testimony on the standard of care and whether it was breached, the jury will "determine what the outcome should have been if the issue had been properly presented in the first instance." *Id.* It does so by "independently evaluating the evidence in the underlying case as it should have been presented …. In this connection the Court of Appeals was incorrect in its conclusion that the jury in the malpractice case was tasked with deciding an issue that could not be resolved by the average lay person … and is not properly the subject of expert testimony. *Id.,* citing *Sotomayor v. TAMA LLC* 274 Ga. App. 323, 326, 617 S.E. 2d 606 (2005).

Palmer provides no authority that requires expert testimony on causation. He cites case law holding Zurich must prove causation as an element of its claim – *see e.g. Grand State Property, Inc. v. Woods, Fuller, Schultz & Smith P.C.* 1996 S.D. 139 ¶18, 556 N.W. 2d 84, 88 (cited in Palmer's MSJ Brief, p. 19, Dkt. 51), and *Zhi Gang Zhang v. Rasmus* 2019 S.D. 45 ¶41, 932 N.W. 2d 153, 165. But none of Palmer's cited cases hold expert testimony on causation is required. In *Grand State* there was no discussion of experts and in *Zhi* the plaintiff failed to designate an expert and the court found that because of that the trial court "did not err when it concluded an expert would be necessary … [to] assist a jury in determining the applicable professional standards in his legal malpractice claim." *Zhi, supra* at 163. And, after identifying

the four elements of a legal malpractice claim – duty, breach, causation and damages – the court in *Zhi* held expert testimony is required only for the first two. *Id.* at 162-163.

Here, the case was not ultimately tried but was settled. Thus, the focus of Palmer on the "case within a case" is somewhat misplaced. The causation inquiry here is not whether there would have been a better outcome had the case been properly tried, but rather, whether the case could have been settled for less had Palmer followed the client's instructions/requests and disclosed what he should have. This inquiry is not limited to the myopic focus of Palmer's motion on the early settlement offer and mediation. Rather it continues throughout Palmer's involvement in the case with his continuing acts and omissions and failure to advise Zurich of his errors and omissions or to remedy them. Whether with truthful disclosure by Palmer of his intentions and conclusions, Zurich could have and would have been able to settle sooner and for less than the $2 million ultimate settlement after spending hundreds of thousands of dollars in additional attorney fees, will be decided by the jury independently, without the need for expert opinion. *See Hamilton v. Sommers* 2014 S.D. 76 N.W.2d 855, 867 (cited by Palmer).

In *Hamilton*, the South Dakota Supreme Court held that in a legal malpractice action involving, as here a settlement, though the plaintiff had presented no expert testimony on causation, the trial court improperly granted summary judgment on causation. The court reasoned that "causation is generally a question of fact for the jury except where there can be no difference of opinion on the interpretation and the facts." *Id.* (citing *Musch v. H-D Coop, Inc.* 487 N.W.2d 623, 624 (S.D. 1992).

Indeed, where as here, the claimed malpractice involves issues within the common knowledge such as an attorney's failure to disclose material facts or concealment, it is questionable whether expert testimony is necessary even on the standard of care. *See e.g. Briggs v. Cochran* 17 F.Supp. 2d 453, 460-461 (D. Md. 1998) ("Expert testimony is not required … on

matters of which the jurors would be aware by virtue of common knowledge") and *Jarnagin v. Terry* 807 S.W. 2d 190, 194 (Mo. Ct. App. 1991) (expert testimony unnecessary where attorney failed to follow the instructions of the client). See also Charles W. Wolfram, *A Cautionary Tale: Fiduciary Breach As Legal Malpractice,* Hofstra Law Review, Vol. 34:689 (2006) at 697 fn. 33, ("unlike the issue of breach of duty … jurisdictions generally do not require that proof of proximate cause be supported by expert testimony. *See e.g. First Union Nat'l Bank v. Benham*, 423 F.3d 855, 864 (8th Cir. 2005) (holding so under Arkansas law).").

### B. ZURICH'S EXPERT APPLIED THE CORRECT STANDARD AND PALMER'S MOTION IS A PREMATURE IMPROPER MOTION IN LIMINE

Zurich briefly responds here to Palmer's challenge to Zurich's expert, Colin Campbell. Zurich responds more fully in its concurrently filed opposition to Palmer's Motion to Exclude Expert Opinions of Colin F. Campbell. ("***Motion to Exclude***") [Dkt. 53, 54]. Palmer admits a statewide standard of care applies citing *Hamilton v. Sommers*, *supra.* 2014 S.D. 26, 855 N.W. 2d 855. And as noted above, Campbell did apply the standard set forth in South Dakota Rules of Professional Conduct 1.1, 1.4(a)(2), 1.4(b) and 3. He testified they do not vary significantly from the rules nationally that he became familiar with in his: 45 years of practice; 17 years as superior court judge in Arizona's largest county-Maricopa; 5 years as presiding judge there; and chairing the Arizona Bar's Committee on Judicial Ethics. [Campbell Report at p. 1, Hoyt Decl. Ex. 2 and Campbell Depo. at 21:13-20, Hoyt Decl. Ex. 3].

In *Hamilton, supra*, the case Palmer relies upon for his Motion to Exclude, the court reversed a summary judgment and motion to strike granted a defendant attorney in a malpractice action. The trial court struck the plaintiff's expert's testimony based on the same challenge Palmer presents here – that the expert was from out of state had no experience in South Dakota, and based his report on his opinion that the standard of care under Model Rules of Professional

Conduct and South Dakota's Rules of Professional Conduct presented "a national standard of care and that there is nothing unique about South Dokata in that regard." *Id.* at 860. The court noted it was significant there (as here), that the expert opined South Dakota's Rules were "identical to the American Bar Association's Model Rules …" and that "in many cases locality is not relevant to the application of the standard of care." *Id.* at 864. Finally, the court found "there was no showing that locality was a relevant factor." *Id.* at 865.

      Here Palmer fails to show how South Dakota "local rules" differ from the standard testified to by Campbell. Palmer would be hard pressed to find any differences in such generic responsibilities/duties as those testified to by Campbell: to keep the client fully informed; to follow their requests; to timely pursue settlement opportunities; to advise the client of an intent not to follow their requests/guidelines instead of concealing it; and to timely advise the client of errors such as wrongful admissions in an answer and failure to move timely to remedy them. These standards apply nationally, are in the Model Rules and are not varied by any South Dakota Rule of Professional Conduct. Indeed, as discussed more fully in Zurich's opposition to Palmer's Motion to Exclude, Palmer's expert, Jack Hieb, admitted to most of these and did not set forth any local standards missed by Campbell, but rather opined Campbell failed to recognize the peculiar practices of Michael Abourezk, the underlying plaintiff's attorney. The practices of one attorney do not set a statewide standard. And Palmer/Hieb have not explained how Abourezk's practices override or alter the duties Campbell testified to – to fully inform the client, to follow the client's requests or disclose an intent not to do so and to be honest and forthright with the client.

      Finally, Palmer's Motion to Exclude Campbell's Opinions as a predicate to his summary judgment motion is nothing more than an inappropriate motion in limine thinly disguised as a motion for summary judgment. *See e.g. Louzon v. Ford Motor Co.* 718 F.3d 556, 563 (6th Cir.

2013) (court will not consider a motion in limine that is nothing more than a thinly disguised motion for summary judgment). Here Palmer's Motion to Exclude Campbell's Opinion is a blatant – not even disguised – motion in limine effort to obtain summary judgment. It is premature, the date for filing motions in limine has not been set.

        **C.**    **THE EVIDENCE AND CAMPBELL'S OPINION COVERS THE ELEMENTS OF BREACH OF FIDUCIARY DUTY**

As discussed, Campbell's report and testimony addresses Palmer's failure to follow Zurich's guidelines and requests and the concealment of his intent to not follow them as well as the nondisclosure of his negative conclusions on defenses, bad faith and acts of malpractice. These amply support the breach of fiduciary duty claim. *See Zoss, supra* CIV 20-4211 at 9 (claims for inadequate advice and failure to disclose material facts "raise issues concerning their [attorney's] confidentiality and loyalty to the client" which would "amount to a breach of fiduciary duty."). *See also Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1290 (Utah App. 1996) (fiduciary duty includes a duty of disclosure: lawyers have a legal duty "to represent the client with undivided loyalty … and to disclose any material matters bearing upon the representation of the client," quoting *Mallens & Smith* at 11.1 (3d ed. 1989) and *Beverly Hills Concepts, Inc. v. Schatz and Schatz, Ribicoff and Kotkins* 717 A.2d 724, 730 (Comm. 1998) ("breach of fiduciary duty implicates a duty of loyalty and honesty") and *Spector v. Mermelstein* 361 F. Supp. 30, 39-40 (S.D.N.Y. 1972) affirmed in part and remanded 485 F.2d 424 (2nd Cir. 1973) (attorney breaches his fiduciary duty if he "withholds from his client information material to the client's decision to pursue a given course of action ….")

The evidence and Campbell's expert report and testimony clearly raise fact issues about Palmer's loyalty and honesty in not disclosing his intentions to disregard the client's wishes. *See also, Rice v. Perl* 320 N.W. 2d 407, 410 (Minn. 1982) (fiduciary duty claim bears on the

standard of conduct – the attorney must "represent the client with undivided loyalty … and to disclose any material matters bearing upon the representation of those matters.").

## IV. CONCLUSION

Palmer's errors and omissions continued well into the three years before Zurich filed its complaint. These "last acts or omissions" render Palmer's statute of repose challenge unsupportable. Palmer's narrow focus on select early acts/omissions is misplaced. There are fact issues as to which acts or omissions caused Zurich to pay more in settlement and fees. And causation will be a fact issue for the jury, no expert opinion on it is necessary.

Campbell is well qualified to render his opinions on the applicable standard under South Dakota law which he testifies is no different than the national standard on these commonsense issues. For example, an attorney's duty: to follow a client's requests; to honestly disclose material facts such as his intent not to follow the client's wishes; and to keep the client fully informed. Any argument as to Campbell's lack of knowledge of local relevant peculiarities in the standard of care – Palmer has not presented any in his motion – would at most go to the weight of Palmer's testimony. The peculiarities of the underlying plaintiff's attorney are at most factual circumstances, not standards. And to the extent they deviate from the duties outlined above, they would be below the state standard. In any event, Palmer's premature challenge is nothing more than a motion in limine seeking a summary judgment.

Finally, the evidence and Campbell's opinion demonstrate there are material fact issues on the breach of fiduciary duty claim.

In sum, Palmer's Motion for Summary Judgment must be denied.

Dated: February 22, 2023        WHITFIELD & EDDY, P.L.C.

By /s/ Stephen E. Doohen
699 Walnut Street, Suite 2000
Des Moines, IA  50309
Tel.: (515) 288-6041
Email: Doohen@whitfieldlaw.com
----
By /s/ Scott R. Hoyt
PIA HOYT, LLC
170 S. Main Street, Suite 1100
Salt Lake City, UT 84101
Tel.: 801-350-9000
Email: shoyt@piahoyt.com

*Attorneys For Plaintiffs, American Zurich Insurance Company and Zurich American Insurance Company*

- 18 -

CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on February 22, 2023, I served PLAINTIFFS' OPPOSITION TO ATTORNEY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, via CM/ECF to all counsel of record.

                                        **/s/ Stephen E. Doohen**
                                          Stephen E. Doohen