UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| AMERICAN ZURICH INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>Plaintiffs,<br>v.<br><br>J. CRISMAN PALMER and GUNDERSON, PALMER, NELSON & ASHMORE, LLP,<br><br>Defendants. | Case No. 5:20-cv-05026-KES<br><br>PLAINTIFFS' RESPONSE TO ATTORNEY DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS, AND PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS |

Plaintiffs American Zurich Insurance Company and Zurich American Insurance Company (collectively "***Zurich***") submits this Response to Attorney Defendants' (collectively "***Palmer***" or "***Defendants***") Statement of Undisputed Material Facts [Dkt. 52] ("***Statement***") and provides additional undisputed facts.

## I. PALMER'S FACTS

1. Joseph Leichtnam's ("Leichtnam") workers' compensation claim arose when he was injured (the "injury") on August 29, 2007, while working in Rapid City, South Dakota. (Palmer Depo. at p.16 (attached as Exhibit A); Exhibit 2).[1]

**Zurich's Response to No. 1:** Undisputed.

---

[1] For the Court's ease of reference, exhibits cited [in Palmer's Facts] with numbers are deposition exhibits, and the number refers to the exhibit number used at the depositions. Exhibits cited with letters refer to depositions taken in this case. All exhibits are attached to the Affidavit of Kristin N. Derenge Dated February 1, 2023.

2.     Plaintiffs, American Zurich Insurance Company and Zurich American Insurance Company (collectively "Zurich"), provided workers' compensation insurance to Leichtnam's employer at the time of the injury. (Palmer Depo. at p.16; Exhibit 2).

**Zurich's Response to No. 2:** Disputed, American Zurich Insurance Company ("AZIC") issued the worker's compensation policy to Leichtnam's employer. AZIC is a subsidiary of Steadfast Insurance Company and Steadfast is a subsidiary of Zurich American Insurance Company.

3.     Zurich gave Leichtnam workers' compensation benefits after the injury, including payment of his medical expenses. (Palmer Depo. at p.38; Exhibit 9).

**Zurich's Response to No. 3:** Undisputed.

4.     On February 27, 2015, Leichtnam filed a bad faith claim (the "Bad Faith Claim") against Zurich arising out of Leichtnam's workers' compensation claim. (Palmer Depo. at p.16; Exhibit 2).

**Zurich's Response to No. 4:** Undisputed.

5.     Zurich retained Attorney Defendants to defend the Bad Faith Claim. (Palmer Depo. at pp.11–12; Exhibit 1; Wagner Depo. at p.31 (attached as Exhibit D); Exhibit 72).

**Zurich's Response to No. 5:** Undisputed.

6.     Mike Abourezk ("Abourezk") represented Leichtnam on the Bad Faith Claim. (Palmer Depo. at p.16; Exhibit 2).

**Zurich's Response to No. 6:** Undisputed.

7.     Associate general counsel for Zurich, Dawn Wagner ("Wagner"), was assigned to supervise the Bad Faith Claim and was Palmer's point of contact. (Wagner Depo. at pp.13, 22).

**Zurich's Response to No. 7:** Undisputed. Dawn Wagner's title was Assistant General Counsel, and has since changed to Senior Assistant General Counsel.

8.      On September 24, 2015, Abourezk offered to settle the Bad Faith Claim for $325,000.00 (the "Early Settlement Offer") with Zurich. (Palmer Depo. at pp.69–70; Exhibit 19).

**Zurich's Response to No. 8:** Undisputed.

9.      On September 25, 2015, Palmer sent the Early Settlement Offer to Wagner. (Wagner Depo. at p.88; Exhibit 89).

**Zurich's Response to No. 9:** Undisputed.

10.     On January 6, 2016, Wagner emailed Palmer and advised that Zurich was amendable to mediate the Bad Faith Claim. (Palmer Depo. at pp.73–74; Exhibit 23).

**Zurich's Response to No. 10:** Undisputed.

11.     On October 24, 2016, a mediation of the Bad Faith Claim took place in Rapid City, South Dakota. (Palmer Depo. at p.82; Exhibit 28).

**Zurich's Response to No. 11:** Undisputed.

12.     At the time of the mediation, Wagner believed the Bad Faith Claim had a reasonable settlement value of $300,000.00 and was prepared to offer that amount to settle the claim at the mediation. (Wagner Depo. at p.134).

**Zurich's Response to No. 12**: Undisputed.

13.     At the October 24, 2016 mediation, Leichtnam's opening demand was for $2,000,000.00, and the mediation failed. (Wagner Depo. at p.132).

**Zurich's Response to No. 13:** Undisputed.

14.     Attorney Defendants continued to represent Zurich after the failed mediation until Zurich retained the Hinshaw Culbertson Law Firm ("Hinshaw Attorneys") to take over lead representation in the case in January 2018. (Wagner Depo. at p.148; Exhibit 104).

**Zurich's Response to No. 14:** Undisputed Defendants continued to represent Zurich through January 2018 but disputed that their representation ended then. It continued through

2018 including signing and filing motions to amend and dismiss in September 2018 [Palmer Depo. at 49:13-21. (Zurich's additional Palmer deposition excerpts referred to in these Responses are attached as Exhibit 1 to the Declaration of Scott R. Hoyt ("*Hoyt Decl.*") in support of Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, filed concurrently herewith, and the selected pages are in numeric order with the key testimony highlighted)].

15. After the Hinshaw Attorneys took on lead representation in January 2018, Attorney Defendants stayed on in a local counsel role only. (Palmer Depo. at p.51).

**Zurich's Response to No. 15:** Undisputed Defendants stayed on as local counsel, which included signing and filing motion to dismiss and to amend to add defenses in September 2018 [Palmer Depo. at 49:13-21, Hoyt Decl. Ex. 1].

16. After Hinshaw Attorneys took over lead representation, Zurich settled the Bad Faith Claim with Leichtnam for approximately $2,000,000.00. (Abourezk Depo. at p.128 (attached as Exhibit B)).

**Zurich's Response to No. 16:** Undisputed.

17. Zurich filed a Complaint against Attorney Defendants on April 20, 2020, alleging breach of fiduciary duty. (Doc. 1).

**Zurich's Response to No. 17:** Undisputed.

18. Zurich later filed a Second Amended Complaint which alleges causes of action against Attorney Defendants for (1) breach of fiduciary duty; and (2) legal malpractice. (Doc. 33).

**Zurich's Response to No. 18:** Undisputed.

19. Zurich hired Colin F. Campbell ("Campbell") to provide an expert opinion on the standard of care for its claims against Attorney Defendants. (Campbell Depo. at p.15 (attached as Exhibit F); Exhibit 115).

**Zurich's Response to No. 19:** Undisputed.

20. Campbell opines that Palmer failed to abide by Rule of Professional Conduct 1.1, stating that an attorney shall provide competent representation, and Rule of Professional Conduct 1.4, stating that an attorney shall reasonably communicate with a client, by failing to adequately analyze the Bad Faith Claim, prepare defense strategies, and adequately communicate and advise Zurich on developments in the case, which, collectively, Campbell opines is a breach of the standard of care. (Campbell Depo. at p.15; Exhibit 115 at pp.9–10).

**Zurich's Response to No. 20:** Undisputed that this is a portion of Campbell's opinion and report. Disputed to the extent it purports to set forth his complete opinion [Campbell Report, attached as Exhibit 2 to Hoyt Decl., and Campbell Depo. at 22:9-25 – 23:1-9; 25:18-21; 37:17-25 – 38:1-13; 41:2-17. (Referenced excerpts to 12/19/2022 Campbell deposition are attached as Exhibit 3 to Hoyt Decl. with pages in numeric order and key portions highlighted)].

21. Campbell opines that Palmer's alleged breaches of the standard of care *caused injury* to Zurich by preventing Palmer from adequately representing Zurich early in the course of Palmer's representation and before the October 24, 2016 mediation. (Campbell Depo. at pp.15, 32–37; Exhibit 115 at pp.9–10).

**Zurich's Response to No. 21:** Undisputed that this is a portion of Campbell's opinion and report. Disputed to the extent it purports to set forth his complete opinion [Campbell Report, Hoyt Decl. Ex. 2, and Campbell Depo. at 22:9-25 – 23:1-9; 25:18-21; 37:17-25 – 38:1-13; 41:2-17, Hoyt Decl. Ex. 3].

22. Campbell opines that the only breaches of the standard of care by Attorney Defendants that *caused injury* to Zurich occurred before the October 24, 2016 mediation. (Campbell Depo. at pp.15, 32–37; Exhibit 115 at pp.9–10).

**Zurich's Response to No. 22:** Disputed. Campbell opined, among other things, that: Palmer failed to follow Wagner/Zurich's instructions and requests; failed to fully inform

Wagner/Zurich of material facts; and failed to disclose material facts. [Campbell Report, Hoyt Decl. Ex. 2; and Campbell Depo. at 22:9-25 – 23:1-9; 25:18-21; 37:17-25 – 38:1-13; 41:2-17, Hoyt Decl. Ex. 3]. These acts and omissions continued and were not disclosed or remedied by Palmer through the duration of his representation into 2018. *Id.*

23. Campbell did not provide an opinion that Palmer committed any breaches of the standard of care that *caused injury* to Zurich after the October 24, 2016 mediation. (Campbell Depo. at pp.15, 32–37; Exhibit 115 at pp.9–10).

**Zurich's Response to No. 23:** Disputed. Campbell opined, among other things, that: Palmer failed to follow Wagner/Zurich's instructions and requests; failed to fully inform Wagner/Zurich of material facts; and failed to disclose material facts. [Campbell Report, Hoyt Decl. Ex. 2; and Campbell Depo. at 22:9-25 – 23:1-9; 25:18-21; 37:17-25 – 38:1-13; 41:2-17, Hoyt Decl. Ex. 3]. These acts and omissions continued and were not disclosed or remedied by Palmer through the duration of his representation into 2018. *Id.*

24. Campbell did not provide an opinion on whether Attorney Defendants breached the duty of loyalty and/or the duty of confidentiality in his expert report and in his deposition. (Campbell Depo. at pp.15, 32–37; Exhibit 115 at pp.6–10).

**Zurich's Response to No. 24:** Disputed. Campbell opined that Palmer failed to disclose material facts to Zurich including his decision and intent not to honor its requests for discovery and other information necessary to enable it – Wagner to make informed decisions [Campbell Report at p. 7 ¶ 13, Hoyt Decl. Ex. 2, and Campell Depo. at 22:9-25 – 23:1-9; 37:17-25 – 38:1-13, Hoyt Decl. Ex. 3].

## II.     ADDITIONAL UNDISPUTED FACTS

Palmer cherry picks the facts of Palmer's early acts and omissions of failing to properly inform Zurich (Dawn Wagner ("*Wagner*") his Zurich contact) to enable her to take advantage of

a $325,000 settlement offer by not timely setting up a mediation to capitalize on it. Palmer also cherry picks Zurich's expert Colin Campbell's opinion that these acts and omissions breached the standard of care. Palmer does so to try and convince the Court that because these particular acts and omissions occurred over three years before Zurich filed this suit, it is barred by the statute of repose. However, Palmer ignores the following undisputed facts showing these and other acts and omissions by Palmer continued well into 2018-2019 and within three years of the filing of the complaint here.

**A.  FACTS SHOWING PALMER'S DISOBEDIENCE OF AND CONCEALMENT OF HIS INTENT TO DISOBEY ZURICH'S REEQUESTS FOR LITIGATION PLAN, DISCOVERY AND DEFENSES CONTINUED THROUGH 2018**

Palmer testified in his deposition to the following:

1. He had Zurich's litigation guidelines. [Palmer Depo. at 11:24-25 – 12:1-18, Hoyt Decl. Ex. 1].

2. He knew they set forth what Zurich expected of him in defending the case. [*Id.*]

3. These included providing Zurich with a litigation plan including discovery, motions and significant activity. [Palmer Depo. at 15:13-25-16:1-4, Hoyt Decl. Ex. 1.]

4. Not only did Palmer fail to provide such a plan with these details by the required dates, 30 and 90 days after receiving the case [*Id.*], this omission continued throughout his work on it up to and including January 4, 2018 when Wagner again asked for his litigation plan – "outline on your defense strategy going forward with regard to our discovery requests" and when he planned on deposing the plaintiff. [Palmer Depo. at 89:22-25 – 90:1-21, Hoyt Decl. Ex. 1].

5. Palmer never provided such a plan, though he was on the case into 2019, he also never propounded any discovery and never took the plaintiff's deposition [Palmer Depo. at 55:13-15, Hoyt Decl. Ex. 1].

6. Palmer admits he never planned on doing any discovery or taking plaintiff's deposition [Palmer Depo. at 90:14-17, Hoyt Decl. Ex. 1], yet, he never informed Wagner/Zurich of this despite her repeated requests that he do so in order to inform her for settlement and defense decisions on the case. [Palmer Depo. at 90:18-25 – 91:1-2, Hoyt Decl. Ex. 1]. He knew she needed this discovery to pursue settlement. *Id.*

7. Instead, Palmer misled Wagner. When she asked in a February 27, 2017 email "Have we taken the plaintiff's deposition yet? What is the deadline for oral discovery completion?" Palmer's response wasn't forthrightly i.e. "no and I don't intend to," but rather he responded: "We have not taken depo. Discovery deadline is 7-19." Though he admits he knew the deposition was important to Wagner's decision making in the case, he had already decided to never take it. [Palmer Depo. at 91:3-16, 19-25 - 92:1-13, Depo. Ex. 31, Hoyt Decl. Ex. 1].

8. Through his involvement in the case up to 2019, Palmer never took the plaintiff's deposition and concealed his intent from the outset not to do despite repeated requests by Wagner/Zurich that he take it. [*Id.*]

9. Palmer admits that by taking that deposition he could have challenged plaintiff's credibility, his claimed damages and even explored whether he had been malingering. [Palmer Depo. at 68:6-19; 83:13-18, Hoyt Decl. Ex. 1].

10. Nor did Palmer through 2018 or thereafter ever interview the Zurich claim representatives that handled the underlying claim to get their version of the claim [Palmer Depo. at 77:3-6, 15-24, Hoyt Decl. Ex. 1].

11. Palmer failed to take any discovery, develop defenses or advise Wagner he had decided to take no discovery and had concluded there were no meritorious defenses through 2018, though Wagner told him she would need the discovery and his evaluation of the defense in order to seek authority to settle. [Palmer Depo. at 69:22-25 – 70:1-5, 9, Hoyt Decl. Ex. 1].

- 8 -

12. Zurich's expert Colin Campbell opined that "through the years following the answer Palmer appears to have failed to conduct his own investigation of the file … serve any discovery or timely provide information requested by Wagner so that she could evaluate the case and properly assess settlement options. For example: … e. Palmer failed to serve any written discovery requests or notice any depositions … j. Although Wagner asked Palmer when depositions would occur, Palmer never told her that he did not intend to take any depositions … k. Palmer never told Wagner that he had already concluded that there would be a finding of bad faith …" [Campbell Report, Hoyt Decl. Ex. 2, and Campbell Depo. at 22:9-25 – 23:1-9; 37:17-25 – 38:1-13, Hoyt Decl. Ex. 3].

13. Mr. Campbell confirmed the opinions in his report in his deposition, including that the acts and omissions outlined in No. 12 above, failed to meet the standard of care. [Campbell Depo. at 22:9-25 – 23:1-9, Hoyt Decl. Ex. 3]. Campbell testified that as "one example … he had instructions from his client of what his client wanted him to do, none of which he did." [Campbell Depo. at 25:18-21, Hoyt Decl. Ex. 3].

14. Campbell testified to acts and omissions by Palmer after the mediation that failed to meet the standard of care, including failing to inform the client on affirmative defenses and failure to take discovery [Campbell Depo. at 37:17-25 – 38:1-13, Hoyt Decl. Ex. 3].

15. Campbell also testified that Palmer's failure to evaluate and discuss defenses with Zurich/Wagner failed to meet the standard of care. [Campbell Depo. at 41:2-17, Hoyt Decl. Ex. 3].

16. Palmer's expert, Jack Hieb, admits that where the client has asked for discovery and the attorney is not going to do it, he/she needs to inform the client of this. [Jack Heib Depo. at 18:21-25 – 19:1-6. (Referenced excerpts to the 12/19/2022 Heib deposition are attached as

Exhibit 4 to Hoyt Decl. with pages in numeric order and key testimony highlighted)]. Yet Palmer never told Wagner of his intent not to.

**B.    FACTS SHOW PALMER FAILED THROUGH 2018 TO RESEARCH DEFENSES, CONCEALED HE HAD CONCLUDED THERE WERE NONE, YET IN 2018 HE SIGNED MOTIONS TO AMEND AND DISMISS TO ADD DEFENSES VERIFYING THEY WERE MERITORIOUS DEFENSES.**

1.    Palmer admits: he never researched potential defenses [Palmer Depo. at 23:1-5, 19-25 – 24:1-4, Hoyt Decl. Ex. 1]; he filed an answer without any affirmative defenses [*Id.* at 25:11-18, 21, Hoyt Decl. Ex. 1]; he had decided without research and without telling Wagner/Zurich that there were no meritorious defenses [Palmer Depo. at 43:22-25 – 44:1-5, Hoyt Decl. Ex. 1; and Palmer's Responses to Zurich's Second Set of Requests for Admission, Admission No. 45, attached as Exhibit 5 to Hoyt Decl.]; and yet on September 7, 2018, Palmer signed Zurich's Motion to File an Amended Answer to add affirmative defenses [Exhibit 6 to Hoyt Decl., Palmer Depo. at 49:13-21 and Depo. Exhibit 10, Hoyt Decl. Ex. 1].

2.    Palmer did not, after reviewing the motion, advise Zurich or its associated counsel, Hinshaw & Culbertson, that he found no merit to the defenses. [Palmer Depo. at 56:11-15 – 57:1-9, 19-20, Hoyt Decl. Ex. 1]. And he knew that under Federal Rule 11, by signing the motion he was representing to the Court there was a good faith basis for the motion and the defenses. [*Id.*].

3.    The Court denied the motion as untimely because Palmer had missed the deadline for amending. [Palmer Depo. at 62:6-13, Hoyt Decl. Ex. 1].

4.    In his expert report, Campbell notes Palmer's failure "to conduct a thorough, timely review of the evidence to evaluate the facts, competently prepare AZIC's [Zurich] defenses, and analyze litigation and settlement strategy … [and that] he was unable or unwilling to prepare a theory of defense and communicate with AZIC regarding the best course of action"

fell below the standard of care [Campbell Report at p. 10, Hoyt Decl. Ex. 2]. As supporting facts Campbell referred to Palmer's failure to present any defenses, and when he moved to add them by motion, they were ruled three years late by the Court which held "woefully absent is any explanation for the delay of three years in bringing the motion." [Campbell Report at p. 9, ¶ 21, Hoyt Decl. Ex. 2]. At his deposition, Campbell testified the items referred to above in his report present, in his opinion "an accurate chronological outline of the case." [Campbell Depo. at 24:19-25, Hoyt Decl. Ex. 3]. And he reiterated that after the mediation, "the whole issue of affirmative defenses which are eventually -- as some of them are determined waived… violates the standard of care …" [Campbell Depo. 37:17-25 Hoyt Decl. Ex. 3].

     5.     In filing the answer, Palmer also failed to deny, but rather, without consulting Zurich, admitted three Zurich named entities – two of which were not involved with the claim, were alter egos of each other and aided and abetted in the alleged bad faith. [Palmer Depo. at 29:14-24 – 30:3-5, 8-12, Hoyt Decl. Ex. 1]. He admits this was "remarkable" [*id.*] and Palmer's expert Hieb admits he would not have made these admissions unless the client approved doing so. [Heib Depo. at 20:23-25 – 21:1-5, 7, 17-21, Hoyt Decl. Ex. 4]. Hieb was unable to deny that doing so increased the exposure by exposing the assets of more than one company. [Hieb Depo. at 21:25-22 – 22:8-12, Hoyt Decl. Ex. 4]. Finally, he admitted Palmer should have made a timely motion to amend the answer to correct this. [Hieb Depo. at 24:6-12, Hoyt Decl. Ex. 4]. Yet as noted above, Palmer failed to do so until September 2018 and then it was ruled untimely.

C.    **FACTS SHOWING ZURICH'S EXPERT, CAMPBELL, APPLIED THE CORRECT STANDARD AND IS QUALIFIED TO DO SO**

    Campbell relied on South Dakota Rules of Professional Conduct 1.1, 1.4(a)(2), 3 and 1.4(b). [Campbell Report, p. 10, Hoyt Decl. Ex. 2]. And he testified that from his 45 years of practice, including chairing the Arizona State Bar's Ethics Committee and as a judge and teacher

of judicial ethics, he was "not aware of any substantial difference with respect to the standard of care rules … between South Dakota and the rest of the country." [Palmer Depo. at 20:22-25 – 21:1-20, Hoyt Decl. Ex. 1]. Nor has Palmer explained how they differ. Instead, his expert Hieb, without foundation, speculates about the peculiar practices of the underlying plaintiff attorney, Michael Abourezk. The practices of a single attorney are not a "standard."

### D.  FACTS SHOWING PALMER BREACHED HIS FIDUCIARY DUTY

As set forth in paragraphs A. 1-15 above, Palmer not only failed to provide Zurich with requested information and willfully disobeyed requests for discovery, he also concealed his intent to not provide the information or take discovery. And Zurich's expert, Campbell, in his report and testimony opined this violated his duties to Zurich. [Campbell's Expert Report, Hoyt Decl., Ex. 2 at ¶¶ e. – j. and Campbell Depo. at 22:9-25 – 23:1-9; 25:18-21, Hoyt Decl. Ex. 3].

Dated: February 22, 2023

WHITFIELD & EDDY, P.L.C.

By /s/ Stephen E. Doohen
699 Walnut Street, Suite 2000
Des Moines, IA  50309
Tel.: (515) 288-6041
Email: Doohen@whitfieldlaw.com
----
By /s/ Scott R. Hoyt
PIA HOYT, LLC
170 S. Main Street, Suite 1100
Salt Lake City, UT 84101
Tel.: 801-350-9000
Email: shoyt@piahoyt.com

*Attorneys For Plaintiffs, American Zurich Insurance Company and Zurich American Insurance Company*

- 13 -

CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on February 22, 2023, I served PLAINTIFFS' RESPONSE TO ATTORNEY DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS, AND PLAINTIFFS' ADDITIONAL UNDISPUTED FACTS, via CM/ECF to all counsel of record.

                                          /s/ Stephen E. Doohen
                                              Stephen E. Doohen