1

```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF SOUTH DAKOTA
                      WESTERN DIVISION

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

AMERICAN ZURICH INSURANCE
COMPANY and ZURICH AMERICAN
INSURANCE COMPANY,

          Plaintiffs,

vs.                                   Case No. 20-cv-5026

J. CRISMAN PALMER and GUNDERSON,
PALMER, NELSON & ASHMORE, LLP,

          Defendants.

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

 Deposition via Zoom of:  JACK H. HIEB
                   Date:  December 19, 2022
                   Time:  12:01 p.m.

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

                         APPEARANCES

Scott R. Hoyt
Pia Hoyt, LLC
Salt Lake City, Utah

     Attorney for the Plaintiffs

Jason R. Sutton
Boyce Law Firm, LLP
Sioux Falls, South Dakota

     Attorney for the Defendants

ALSO PRESENT:    Colin F. Campbell

REPORTED BY:     Audrey M. Barbush, RPR
```

**EXHIBIT 4**

18

1  went over, an attorney has to fully inform the client
2  of his plans for the conduct of the case to meet the
3  expectations of the client.
4          MR. SUTTON:  Object to the form.  "Ethical rules"
5  is vague.
6          THE WITNESS:  Yeah, I -- which rule are you
7  talking about?
8  BY MR. HOYT:
9  Q  Well, let's put aside the rules.  Does the standard of
10    care in South Dakota require an attorney to fully
11    inform his client of his plans to conduct the defense
12    of the matter to meet the client's expectations?
13 A  I don't believe so.
14 Q  What part of that do you disagree with?
15 A  I mean, I defend cases or plaintiff cases all the time
16    where I don't sit down and provide my client with a
17    laundry list of all of the things that I think I might
18    do at some point to either defend or prosecute the
19    case.  I don't think I have an ethical obligation to
20    provide that.
21 Q  If a client's asked you to conduct discovery and you
22    don't plan to, do you think you need to inform the
23    client of that?
24 A  If a client is specifically asking me to do something
25    in the nature of discovery and I think it's a bad idea

                                                                19

1           or don't want to do it, yes, I think I have an
2           obligation to tell them "I think that's a bad idea.
3           I'm not going to do it.  Here's why."
4      Q    Did Palmer ever tell Wagner why he intended to take no
5           discovery?
6      A    I don't know that it came up in that context.
7      Q    Let's look at the complaint, the underlying complaint
8           that Palmer was defending.  We'll mark that as
9           Exhibit --
10              MR. SUTTON:  This has already been marked as
11          Exhibit 2.
12              MR. HOYT:  Exhibit 2, okay.
13              THE WITNESS:  I think I brought a comprehensive
14          set of the prior exhibits, so I'll see if I can find it
15          here.  Hold on.
16              MR. SUTTON:  Jack, it's also in what I sent you
17          last week.
18              THE WITNESS:  Yeah, but those were marked 1
19          through whatever.
20              MR. SUTTON:  But if you look at the actual
21          document, it's got the exhibit sticker number.
22              THE WITNESS:  Yep.  I've got Exhibit 2 in front of
23          me.  I've got a copy of it.
24              MR. HOYT:  All right.  And I'm going to mark -- I
25          think the answer's already been marked, too, Jason.

20

1       What number is that?
2               MR. SUTTON:  That's Exhibit 5.
3               MR. HOYT:  Exhibit 5.
4               THE WITNESS:  I have that also.
5   BY MR. HOYT:
6   Q   All right.  So let's look first at the complaint,
7       Exhibit 2.
8               Paragraph 3.  It's alleged "Defendants,
9       hereinafter Zurich, are alter egos or instrumentalities
10      of each other and either committed or aided and abetted
11      the acts hereinafter alleged."  And the plurality of
12      Zurichs are listed in the complaint up above.  Do you
13      see that, American Zurich Insurance Company, Zurich
14      American Insurance Company, and Zurich North America?
15  A   I see that.
16  Q   Yeah.  Which of those three companies actually issued
17      the workers' comp policy that was at issue?
18  A   I don't know the answer to that.
19  Q   Which of those three actually handled the claim?
20  A   I don't know the answer to that.
21  Q   Did you see anything that indicated that Palmer knew?
22  A   I don't recall.
23  Q   And yet you saw in the answer -- if you look at the
24      answer, paragraph 1, Palmer admits paragraph 3.  In
25      other words, Palmer admits that the defendants were

1     alter egos of each other and committed or aided and
2     abetted the acts of bad faith alleged.  You saw that,
3     correct?
4  A  I did.
5  Q  You would agree that was a mistake on his part.
6          MR. SUTTON:  Objection.  "Mistake" is vague.
7          THE WITNESS:  I don't know.  I don't know that.
8  BY MR. HOYT:
9  Q  Did you read his deposition where he admitted that?
10 A  I read his deposition.  I don't -- I guess I don't
11    recall him admitting that.  I'm not going to say he
12    didn't.
13 Q  Would you have admitted that?
14 A  Would I have admitted that I made a mistake if I made a
15    mistake?
16 Q  No.  Well, that's another question.  I'll ask that.
17    But would you admit that -- would you have admitted
18    that allegation without researching at least which
19    company was which?
20 A  I would not have admitted that allegation unless my
21    client gave me information to suggest that I should.
22 Q  And admitting something like that has the likelihood of
23    increasing the exposure by adding the assets of more
24    than one of the companies involved into the mix,
25    correct?

Jack H. Hieb - December 19, 2022

22

1 MR. SUTTON: Object to the form of the question.
2 THE WITNESS: I don't know the answer to that. I
3 don't think it increases the exposure.
4 BY MR. HOYT:
5 Q Doesn't that open up more than one company to possible
6 liability?
7 A Not necessarily.
8 Q When you're alleging that they aided and abetted and
9 are alter egos of each other, you wouldn't agree that
10 that opens up more than one of the companies to
11 exposure?
12 A It depends.
13 Q Depends on what?
14 A Well, first of all, is there reinsurance involved here?
15 Were these parties ultimately financially responsible
16 or -- I don't know.
17 Q If you'll look at your report on page 19.
18 A Sure. Give me a second here.
19 I'm there.
20 Q Footnote 7, you talk about Abourezk's theory about
21 metrics and STIP and the relationship between Zurich
22 and certain captive companies, and you note "this was
23 the part of the case that would potentially drive the
24 damages way up."
25 A Yes.

Jack H. Hieb - December 19, 2022

24

1     find out, you know, what's the interrelationship here.
2 Q   Did you see any indication that Palmer did that?
3 A   I don't have a recollection of anything in the things I
4     looked at that addressed that.  I don't know one way or
5     the other whether he did.
6 Q   Should Palmer have made a timely motion to amend that
7     answer to correct that admission to paragraph 3?
8         MR. SUTTON:  Objection.  Vague.  "Should."
9         THE WITNESS:  If it was an incorrect admission and
10    if he was aware that it was incorrect, then normally
11    you would move to amend it, if you think it's going to
12    matter.
13 BY MR. HOYT:
14 Q   Now, in your report -- let's go to page 9.
15 A   Sure.  Give me a second here.
16 Q   Sure.
17 A   I've already managed to make a mess of this.  Hold on.
18     I am there.
19 Q   Down in C, discussing the failure to propound written
20    discovery or take depositions, you opine that his
21    failure to serve written discovery or take depositions
22    did not harm Zurich, nor does the failure constitute
23    any type of malfeasance.  One of the bases for that is
24    that, you say, because documents are customarily
25    provided through the initial disclosures anyway.  Do