UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| AMERICAN ZURICH INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>J. CRISMAN PALMER and GUNDERSON, PALMER, NELSON & ASHMORE, LLP,<br><br>Defendants. | Case No. 20-cv-5026<br><br>**ATTORNEY DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs, American Zurich Insurance Company and Zurich American Insurance Company (collectively "Zurich"), raise two primary arguments in their opposition to J. Crisman Palmer's ("Palmer") and Gunderson, Palmer, Nelson & Ashmore, LLP's (collectively "Attorney Defendants") Motion for Summary Judgment. First, Zurich argues that, under the continuing tort doctrine, the statute of repose does not bar Zurich's claims because Attorney Defendants committed negligent acts after April 20, 2017. (Doc. 62 at pp.1–3). Second, Zurich claims that the testimony of its expert, Colin F. Campbell ("Campbell"), should not be stricken, and, therefore, Zurich has presented admissible expert testimony that precludes summary judgment. (Doc. 62 at pp.1–3). Both of these arguments fail, and Attorney Defendants are entitled to summary judgment.

## ARGUMENT

**A. The statute of repose bars Zurich's malpractice and breach of fiduciary duty claims in this case.**

Trying to survive summary judgment, Zurich distorts both the record and the case law. Its efforts fail, and SDCL 15-2-14.2 bars Zurich's claims.

1

Zurich conflates its arguments and theories to argue that it has a viable malpractice claim against Attorney Defendants for conduct occurring through 2018. Close review of the actual evidence in the record and its application to the elements of a legally cognizable malpractice case destroy Zurich's arguments.

There are four essential elements of a legal malpractice claim in South Dakota: "(1) the existence of an attorney-client relationship giving rise to a duty, (2) the attorney, either by an act or failure to act, breached that duty, (3) *the attorney's breach of duty proximately caused injury to the client, and (4) the client sustained actual damage*." *Hamilton v. Sommers*, 2014 SD 76, ¶ 21, 855 N.W.2d 855, 862 (emphasis added). According to the South Dakota Supreme Court: "a client must have 'sustained actual injury, loss or damage' as a result of a breach of duty in order to sustain a cause of action for professional negligence." *Robinson-Podoll v. Harmelink, Fox & Ravnsborg Law Office*, 2020 SD ¶ 34 n.6, 939 N.W.2d 32, 44 n.6 (quoting *Haberer v. Rice*, 511 N.W.2d 279, 284 (S.D. 1994).

Just like malpractice, breach of fiduciary duty claims have four essential elements: "(1) that the defendant was acting as plaintiff's fiduciary; (2) that the defendant breached a fiduciary duty to plaintiff; (3) *that plaintiff incurred damages; and (4) that the defendant's breach of the fiduciary duty was a cause of plaintiff's damages*." *Chem-Age Indus., Inc. v. Glover*, 2002 SD 122, ¶ 38, 652 N.W.2d 756, 772 (emphasis added). Thus, proximate cause and damages are essential elements for both legal malpractice and breach of fiduciary duty claims. *Hamilton v. Sommers,* 2014 SD at ¶ 39, 855 N.W.2d at 867; *see also Grand State Property, Inc. v. Woods, Fuller, Shultz & Smith, P.C.*, 1996 SD 139, ¶ 18, 556 N.W.2d 84, 88 (stating that "[p]roof of damages proximately caused by the attorney's [breach] is a fundamental element" of both legal malpractice and breach of fiduciary duty claims). To survive summary judgment, Zurich must

2

present admissible evidence supporting each essential element. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (stating a moving party is entitled to summary judgment when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof"); *see also St. Jude Medical, Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 595 (8th Cir. 2001) ("If the party with the burden of proof at trial is unable to present evidence to establish an essential element of that party's claim, summary judgment on the claim is appropriate.").

Here, Zurich argues that Palmer committed several breaches of the standard of care that continued through 2018. (Doc. 62 at pp.9–10). Zurich ignores that the legal analysis does not end with breach. Zurich must also show that any alleged breach caused harm to Zurich. This is where Zurich's arguments crumble. Attorney Defendants are entitled to summary judgment because: (1) the only evidence of causation and damages is Zurich's claim that Palmer's alleged malpractice prevented it from settling the case before the mediation; (2) Zurich presents no evidence of any harm allegedly caused by any alleged breach after the October 24, 2016 mediation; and (3) the statute of repose prevents Zurich from recovering for any alleged malpractice or breach of fiduciary duty occurring before the mediation.

> 1. *The Alleged Injury—Inability to Take Advantage of Early Settlement— Occurred No Later Than October 24, 2016 When the Mediation Occurred.*

Zurich's expert opines that Attorney Defendants breached the standard of care numerous ways, which breaches prevented Zurich from evaluating an early settlement offer. (Exhibit 115 at pp.9–10; Campbell Depo. at pp.32–41). The undisputed facts establish that this alleged malpractice, and the corresponding injury, occurred no later than October 24, 2016.

In response to Attorney Defendants' statement of undisputed material facts, Zurich admits the key facts. Zurich admits that Attorney Defendants represented Zurich in a bad faith case

3

brought by Joseph Leichtnam ("Leichtnam"). (Doc. 63 at ¶, p.2, at Nos. 4 & 5). Zurich admits that Leichtnam made an early settlement offer in the amount of $325,000.00, (Doc. 63, p.3, at No. 8), a mediation occurred in the bad faith case on October 24, 2016, (Doc. 63, p.3, at No. 13), and Zurich was prepared to pay $300,000.00 at the mediation to settle the case, (Doc. 63, p.3, at No.12).[1] At the mediation, Zurich admits that Leichtnam increased his settlement demand to $2 million, and the mediation thus failed. (Doc. 63, p.3 at No. 13)

Based upon these undisputed facts, Leichtnam revoked the early settlement offer at the mediation. Once the settlement offer increased to $2,000,000.00 at the mediation, Zurich lost its opportunity to settle the case for the early settlement amount of $325,000.00. Zurich's injury is the alleged inability to accept the early settlement offer. That harm occurred at time of the mediation, and logically, any breach of the standard of care causing that harm must have occurred before the mediation.

Zurich's own expert, Campbell, confirms that the only wrongful conduct actually harming Zurich occurred before the mediation. Zurich's expert, Campbell, opined that Palmer's alleged failure to comply with the standard of care prevented Zurich from being able to evaluate this early settlement offer. (Ex. 115; Campbell Depo. at pp.31–35). Because this harm occurred when the early settlement offer was revoked at the mediation, Campbell conceded that he was not opining that any alleged breach of the standard of care occurring after the mediation actually caused harm to Zurich. (Campbell Depo. at pp.36–37).

In sum, Zurich claims Attorney Defendants committed a myriad of malpractice and breaches of fiduciary duty prior to the mediation. It also claims these breaches harmed Zurich by

---

[1] Attorney Defendants dispute that Zurich would have paid $300,000.00 at the mediation, but viewing the evidence in the light most favorable to Zurich, this motion assumes that Zurich would have paid up to $300,000.00 to settle the bad faith case at the mediation.

4

preventing it from accepting the early settlement offer. The alleged breaches preventing Zurich from accepting the early settlement all occurred before the mediation, when the early settlement offer was revoked.

> 2. *The Statute of Repose Prevents Zurich from Recovering for Any Alleged Malpractice or Breach of Fiduciary Duty Occurring Before the October 24, 2016 Mediation.*

The South Dakota Legislature adopted a three-year statute of repose governing claims against attorneys. SDCL 15-2-14.2. This statute of repose applies to both legal malpractice and breach of fiduciary duty claims against attorneys. *See Slota v. Imhoff & Associates, P.C.*, 2020 SD 55, ¶ 26, 949 N.W.2d 869, 877 (stating that claims for legal malpractice and breach of fiduciary duty "are often indistinguishable" for purposes of SDCL 15-2-14.2, and SDCL 15-2-14.2 may apply to bar both legal malpractice and breach of fiduciary duty claims). SDCL 15-2-14.2 is an occurrence rule, and the repose period commences when the lawyer commits the alleged wrongful act regardless of when the client learns about the error. *Robinson-Podoll*, 2020 SD 5 ¶¶ 21–22, 939 N.W.2d at 40; *see also Slota*, 2020 SD 55 at ¶ 23, 949 N.W.2d at 876.

Here, as described above, Zurich claims it lost the opportunity to accept an early settlement offer. This settlement offer was revoked at the mediation on October 24, 2016. The alleged harm thus occurred at the time of the mediation, and any wrongful act causing that harm must have occurred before the mediation on October 24, 2016. Under SDCL 15-2-14.2's occurrence rule, the three-year repose period commenced when the wrongful act was committed. As a result, at the absolute latest, the three-year repose period expired three years after the mediation on October 24, 2019. Zurich did not commence this action until April 20, 2020, and Zurich cannot recover as a matter of law for any alleged malpractice or breach of fiduciary duty that occurred before April

5

20, 2017. *See Slota*, 2020 SD 55 at ¶ 22, 949 N.W.2d at 876 ("[W]ith the expiration of the period of repose, the putative cause of action evanesces; life cannot thereafter be breathed back into it.").

> 3. *There is No Evidence that Any Alleged Breach Occurring After the Mediation Caused Any Harm to Zurich.*

Campbell's expert opinion and Zurich's briefs allege the Attorney Defendants breached the standard of care after the mediation. (Doc. 62 at pp.3–8; Doc. 63 at pp.7–11). However, nowhere in Zurich's briefing does it provide any evidence that these alleged breaches caused any injury to Zurich. (Doc. 62 at pp.3–8; Doc. 63 at pp.7–11). Likewise, in his written report and testimony, Campbell opines that Palmer made numerous breaches that, collectively, caused injury to Zurich by leaving Zurich ill-equipped to reach a settlement before October 24, 2016.[2] (Exhibit 115 at pp.9–10; Campbell Depo. at pp.32–41). However, Campbell does not opine that any such

---

[2] Zurich argues that expert testimony on causation is not required to state a legal malpractice or a breach of fiduciary duty claim. (Doc. 62 at pp.10–12). The South Dakota Supreme Court has not yet addressed this issue. However, the majority rule is that expert testimony is required to establish causation in legal malpractice claims, absent a showing that causation would be obvious to a lay person. *See, e.g.*, *Marbury L. Grp., PLLC v. Carl*, No. CIV.A. 09-01402 CKK, 2013 WL 4583558, at *7 (D.D.C. July 21, 2013) ("[I]n the overwhelming majority of legal malpractice cases, standard of care, breach, and causation issues require expert testimony."); *Dorrough v. Tarpy*, 260 F. App'x 862, 863 (6th Cir. 2008) ("In a legal malpractice action, expert testimony is required to establish negligence and proximate cause unless the alleged malpractice is within the common knowledge of laymen." (cleaned up)); *Streber v. Hunter*, 221 F.3d 701, 726 (5th Cir. 2000) ("[W]e believe that the proper rule is one that would only require expert testimony on proximate cause cases where determination of that issue is not one that lay people would ordinarily be competent to make."); *Hiscox Ins. Co. Inc. v. Warden Grier, LLP*, No. 4:20-CV-00237-NKL, 2021 WL 5828042, at *6 (W.D. Mo. Dec. 8, 2021) ("Expert evidence is generally required to establish proximate causation in legal malpractice claims*"); Beach TV Properties, Inc. v. Solomon*, 306 F. Supp. 3d 70, 93 (D.D.C. 2018) (applying Virginia law to hold that "it is well-established that unless a malpractice case turns upon matters within the common knowledge of laymen, expert testimony is required to establish that such a deviation was the proximate cause of the claimed damages." (cleaned up)); *Palmer v. Sena*, 474 F. Supp. 2d 347, 350–51 (D. Conn. 2007) (holding that, under Connecticut law, expert testimony is required to establish proximate cause in legal malpractice claims); *Floyd v. Hefner*, 556 F. Supp. 2d 617, 643 (S.D. Tex. 2008) ("Generally, expert testimony is also required to prove that any claimed damages were proximately caused by a breach of duty by the defendant attorney."); *Weber v. Sanborn*, 526 F. Supp. 2d 135, 146 (D. Mass. 2007) ("Absent exceptional circumstances, it is well established under New Hampshire law that expert testimony is necessary . . . to prove proximate causation in a legal malpractice action."); *O'Shea v. Brennan*, No. 02 CIV. 3396 (KNF), 2004 WL 583766, at *14 (S.D.N.Y. Mar. 23, 2004) (holding that, without expert testimony, a jury would likely be unable to determine proximate cause in a legal malpractice claim). Regardless, the Court does not need to decide whether expert testimony on causation is necessary or appropriate to state a claim because Zurich has not presented *any* evidence, from expert testimony or otherwise, of injury and causation "occurring" after the October 24, 2016, mediation.

breaches of care *caused Zurich injury* except for those breaches leading up to the October 24, 2016, mediation (Exhibit 115 at pp.9–10; Campbell Depo. at pp.32–41).

Indeed, close review of Zurich's responses to the statement of undisputed material facts confirm that Zurich has no evidence that any alleged breach occurring **after** the mediation caused it any harm. In the statement of undisputed material facts, Attorney Defendants stated in paragraphs 21 and 22 that Zurich's expert opined that any harm caused by Attorney Defendants' alleged breach of the standard of care occurred before the October 24, 2016 mediation. (Doc. 63, at p.5). Zurich purported to dispute paragraphs 21 and 22, but the only evidence it cited was allegations that Attorney Defendants **breached** the standard of care after the mediation. (*Id.*). Zurich does not allege or present any evidence suggesting that any breach after the mediation actually caused any harm. (*Id.*). Moreover, despite providing nearly six pages of additional "material" facts, Zurich never once alleges that Attorney Defendants' alleged malpractice after the mediation caused any harm. Thus, on the elements of causation and injury occurring after October 24, 2016 mediation, Zurich has not borne its burden of identifying evidence creating a genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (stating that in opposing summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial").

Zurich cannot allege any breach after the mediation caused harm because the undisputed evidence proves no harm occurred. Zurich claims Attorney Defendants breached the standard of care by failing to proceed with discovery. (Doc. 62 at pp.3–5). But, discovery remained open after Attorney Defendants were removed as counsel, and Zurich had every opportunity to pursue any discovery it wanted to do so.  (Ex. 50 at Doc. 142). Zurich also criticizes Attorney Defendants for failing to develop and communicate their defense strategy. (Doc. 62 at pp.3–8). But Zurich fails to

7

link any vague, alleged failure to communicate or develop strategy to any concrete harm. (Doc. 62 at pp.3–8), and the Hinshaw Culbertson Law Firm ("Hinshaw Firm") firm took over responsible for communication and defense strategy in January 2018. Finally, Zurich never argues Palmer's failure to plead affirmative defenses actually *caused harm* to Zurich. (Doc. 62 at pp.6–8). Presumably, this is because those affirmative defenses lacked merit.[3] (*See* Abourezk Depo. at pp.61–66;[4] Fuller Depo. at pp.41–47;[5] Ex. 114 at pp.4–9).

In sum, Zurich has presented no evidence that any alleged breach occurring after the October 2016 mediation caused any harm. Without evidence of causation and damages, Zurich cannot recover for any alleged breach occurring after October 24, 2016. In turn, Attorney Defendants are entitled to summary judgment on any alleged malpractice or breach of fiduciary claim based upon acts occurring after the mediation. *See Weiss v. Van Norman*, 1997 SD 40, ¶ 13, 562 N.W.2d 113, 116 (affirming summary judgment for lawyer-defendant in legal malpractice case because alleged malpractice did not cause the harm and stating that "[c]ausation is generally a question of fact for the jury except when there can be no difference of opinion in the interpretation of the facts").

---

[3] When this case started, Zurich's complaint indicated its malpractice claim against Palmer was based upon Palmer's alleged failure to timely plead affirmative defenses. (Doc. 1 at ¶¶ 19–26). Apparently, Zurich realized that the alleged failure to timely plead affirmative defenses did not cause it any harm because, as the parties proceeded with discovery, Zurich changed its theory to claim that Attorney Defendants' alleged malpractice occurred before the mediation and prevented Zurich from taking advantage of an early settlement offer.

[4] This portion of the Abourezk Depo. is attached as Exhibit G to the Affidavit of Kristin N. Derenge Dated March 8, 2023. Unless otherwise noted, all exhibits and deposition transcripts are attached to the Affidavit of Kristin N. Derenge Dated January 31, 2023.

[5] This portion of the Fuller Depo. is attached as Exhibit H of the Affidavit of Kristin N. Derenge Dated March 8, 2023. Unless otherwise noted, all exhibits and deposition transcripts are attached to the Affidavit of Kristin N. Derenge Dated January 31, 2023.

> 4. *Zurich Cannot Rely on the Alleged Breaches Occurring After the Mediation to Extend the Repose Period Under the Continuing Tort Doctrine.*

Misinterpreting South Dakota law and *Zoss v. Protsch*, No. Civ. 20-4211, 2021 WL 1312868 (D.S.D. April 8, 2021), Zurich argues that the Attorney Defendants' alleged breaches of the standard of care after the mediation prevented the repose period from commencing until 2018. (Doc. 62, at pp.9–10). Specifically, Zurich argues that the repose period does not commence until the date of the "last culpable act or omission," and it does not run where there is an "unbroken course of negligent treatment." (Doc. 62 at pp.9–10). The "last culpable act or omission" concept arises out of the continuing tort doctrine discussed by the South Dakota Supreme Court in *Robinson-Podoll*, at ¶ 44. A close reading of the *Robinson-Podoll* case requires rejection of Zurich's argument and entry of summary judgment for Attorney Defendants.[6]

In *Robinson-Podoll*, the lawyer-defendant represented the client in a personal injury claim against two defendants, Ewalt and Mitchell, arising from a car accident. *Id.* at ¶¶ 2–3. The lawyer-defendant failed to commence the personal injury case against Ewalt within the applicable statute of limitations. *Id.* at ¶¶ 5, 45. The limitations period on the car accident case expired on April 28, 2010. *See id.* at ¶ 4; *see also* SDCL 15-2-14. There was an issue about whether the personal injury claim was properly served in time on Ewalt. *Robinson-Podoll* at ¶¶ 36–37. Even though the statute of limitations on the car accident claim expired in 2010, the lawyer-defendant continued to represent the client until 2015. *Id.* at ¶6. The continued representation included: an intermediate appeal of the statute of limitations issue; a jury trial on a service issue following remand; a motion to dismiss the claims against Ewalt in 2013 based upon the statute of limitations, and continued representation in a personal injury action against Mitchell arising from the car accident. *Id.* at ¶¶

---

[6] A lengthy discussion of the facts and claims in *Robinson-Podoll* is necessary to understand why Zurich's argument fails.

5–6. Ultimately, after the lawyer-defendant withdrew as counsel, the client sued the lawyer-defendant for malpractice in 2016. *Id.* at ¶ 7.

The South Dakota Supreme Court held that SDCL 15-2-14.2 is a statute of repose, and that the repose period commences when the alleged error or mistake occurred. *Id*. at ¶¶ 21–22. The Supreme Court also held as a matter of law that the repose period cannot be tolled based upon either fraudulent misrepresentation or the continuing representation doctrine. *Id.* at ¶¶ 23–25. The court thus held that the three-year statute of repose barred the client's recovery for the alleged malpractice, namely failure to timely commence the lawsuit against defendant Ewalt. *Id.* at ¶¶ 45–49.

In *Robinson-Podoll*, the South Dakota Supreme Court recognized that the client had an additional, separate malpractice claim against the lawyer-defendant. The court held that the lawyer-defendant had a duty to advise the client that the lawyer-defendant had made a mistake, stating that a lawyer "has a professional duty of care in South Dakota to notify a client of an act, error, or omission that is reasonably expected to be the basis of the malpractice claim." *Id.* at ¶ 41. "In most instances, a duty to disclose will only arise when the client has already sustained actual injury, or the likelihood of injury is apparent." *Id.* A lawyer's failure to disclose their mistake to the client is a **separate** malpractice claim. *Id.* at ¶ 46. Critically, this separate claim of malpractice must cause harm to the client for it to be actionable. *Id.* at ¶ 34 n.6.

The South Dakota Supreme Court recognized that the damages arising from a lawyer's failure to disclose a mistake is expiration of the repose period on the original claim of malpractice. *Id.* at ¶ 46. For example, in *Robinson-Podoll*, the lawyer-defendant's breach of the standard of care by failing to disclose their mistake (failure to timely commence the lawsuit) actually injured the

10

client by preventing the client from suing the attorney for malpractice based on that mistake within the three-year repose period. *Id.*

Moving to the continuing representation doctrine, the court in *Robinson-Podoll* discussed whether the doctrine extended the repose period for the first act of malpractice, namely, failure to timely commence the personal injury claim against Ewalt. Relying on *Pitt-Hart v. Sanford USD Medical Center*, 2016 SD 33, ¶ 26, 878 N.W.2d 406, 415, the court in *Robinson-Podoll* acknowledged that the continuing tort doctrine applies to the statute of repose governing medical malpractice claims. *Robinson-Podoll*, at ¶ 44, 939 N.W.2d at 47. Under the continuing tort doctrine, "the repose period does not start until the last date of negligent treatment 'because the repose period is measured . . . from the date of the last culpable act or omission of the defendant.'" *Id.* at ¶ 44 (quoting *Pitt-Hart*, at ¶ 26, 878 N.W.2d at 415) (omission in original). Not all subsequent negligent acts trigger the continuing tort doctrine, however.

"'In the context of medical malpractice, this doctrine applies when <u>the harm</u> is the cumulative effect of several treatments rather than the result of a single act.'" *Id.* at ¶ 44 (quoting *Pitt-Hart*, at ¶ 25, 878 N.W.2d at 415) (emphasis added). Thus, according to *Pitt-Hart*, the continuing tort doctrine delays commencement of the repose period "if the plaintiff shows: '(1) that there was a continuous and unbroken course of negligent treatment; and (2) that treatment was so related as to constitute one continuing wrong.'" *Id.* at ¶ 44 (quoting *Pitt-Hart*, at ¶ 26, 878 N.W.2d at 415).

Applying the continuing tort doctrine to the facts of *Robinson-Podoll*, the South Dakota Supreme Court held that the doctrine did not extend the repose period for the initial malpractice claim based upon failure to timely commence an action against Ewalt. *Id.* at ¶ 45. The court recognized that the attorney-defendant committed subsequent negligent acts in failing to disclose

11

existence of the mistake. *Id.* But, the wrongful acts supporting the two malpractice claims caused different harms. *Id.* According to the court, the client "initially sustained *damage* from a single act of alleged negligence when [the lawyer-defendant] failed to timely commence the personal injury claim against Ewalt." *Id.* at ¶ 45 (emphasis added). "Any wrongful conduct by [the lawyer-defendant] thereafter in failing to disclose the error was not the cause *of that initial injury*." *Id.* (emphasis added). As a result, the continuing tort doctrine did not extend the three-year repose period applicable to the initial malpractice. *Id.*; *see also Zoss v. Protsch*, 2021 WL 1312868, at *4 (D.S.D. Apr. 8, 2021). In other words, the continuing tort doctrine only extends the repose period if there are continuous and unbroken negligent acts that cumulatively cause the same harm. *See id.*; *see also Pitt-Hart*, at ¶ 26, 878 N.W.2d at 415 (quoting *Cunningham v. Huffman*, 609 N.E.2d 321, 325 (Ill. 1993) ("When the cumulative result[] of continued negligence *is the cause of the injury*, the statue of repose cannot start to run until the last date of negligent treatment." (alteration in original and emphasis added)).

Like in *Robinson-Podoll*, Zurich cannot rely on the continuing tort doctrine to extend the repose period for the alleged malpractice occurring before the mediation. As discussed above, Zurich claims that Attorney Defendants committed malpractice, which injured Zurich by preventing it from properly evaluating and accepting the early settlement offer. The injury and damages from this alleged malpractice occurred on or before October 24, 2016, mediation, when the settlement demand was increased to $2 million dollars. Any later alleged malpractice did not cause this harm. Thus, this "injury" was caused solely by alleged negligence occurring before the mediation, and the repose period commenced no later than October 24, 2016. Any later malpractice or breaches of fiduciary duty caused a different harm,[7] and thus, the continuing tort doctrine does

---

[7] In actuality, as discussed above, Zurich fails to identify any harm caused by any wrongful act occurring after the mediation.

not extend the repose period for malpractice or breaches of fiduciary duty occurring before the October 24, 2016 mediation. The repose period thus expired on October 24, 2019. Zurich did commence this present action until April 20, 2020. (Doc. 1). Therefore, Attorney Defendants are entitled to summary judgment.

Zurich claims that *Zoss v. Protsch* supports application of the continuing tort doctrine to this case. In *Zoss*, the alleged malpractice arose out of drafting agreements to sell cattle and perfect a security agreement in the cattle sold. *Zoss*, 2021 WL 1312868, at *1. The attorney prepared the sale documents for a client on or before December 30, 2017. *Id.* The attorney also filed UCC-1 financing statements on January 2, 2018, and January 4, 2018. *Id.* The complaint in the case specifically alleged that the "financing statements were defective and were result of attorney malpractice." *Id.* Later, the cattle were sold, and the sale proceeds were seized by creditors who had priority over the client because of the allegedly defective financing statements. *Id.* The client sued the attorney on December 31, 2020, and the attorney argued that the three-year statute of repose barred the claim because the sales documents were prepared (and any negligent act occurred) over three years earlier on December 30, 2017. *Id.* at *3.

In ruling on a Rule 12(b)(6) motion, Judge Piersol ruled that the statute of repose did not prevent the client's complaint from stating a claim. *Id.* at *3. In doing so, it is unclear whether Judge Piersol applied the continuing tort doctrine. Judge Peirsol held that, under South Dakota law, the preparation of financing statement and the filing of these statements are part of one, continuous transaction that may span several days. *Id.* Then, relying South Dakota authority on the application of SDCL 15-2-14.2 to malpractice suits based on failure to file financing statements, the Court held the date of "occurrence" for purposes of SDCL 15-2-14.2 was the date

of filing in January of 2018. *Id*. Therefore, the statute of repose did not begin to run until the UCC-1 statements were filed January of 2018, and the claim was not time-barred.

To the extent Judge Piersol applied the continuing tort doctrine, it makes sense for the court to rule that the filing of the allegedly defective financing statements are part of the same continuing tort, and thus, the action was timely commenced. The court noted that proper filing of the financing statements is a critical component in perfecting the client's security interest in property. *Id*. The harm in the *Zoss* case was losing priority over the proceeds from the sale of the cattle, and the filing of the financing statements was directly related to that harm. Thus, the "tort" for the continuing tort doctrine continued until the last negligent act occurred that caused that harm. *Id*. at *3, *see also Pitt-Hart*, at ¶ 26, 878 N.W.2d at 415 (stating that when the harm is caused by a single identifiable act versus a continuing course of negligent treatment, then the tort is complete when the single act occurred).

The facts of this case distinguish it from *Zoss*. In *Zoss*, Judge Piersol held that that entire transaction, including the filing of the financing statements, prevented the client from having priority over the proceeds, and the repose period commenced upon the filing of the UCC documents per South Dakota law. *Id*. Here, however, Palmer's alleged breaches of care are not part of a single transaction. And materially, while the "occurrence" in *Zoss* occurred in January of 2018 and within the applicable repose period, the "occurrence" here occurred no later than October 24, 2016, which is and was outside of the repose period. Any later breaches of care could did not cause the same harm, and as a result, the continuing tort doctrine does not apply. Thus, Zurich cannot rely on *Zoss* or the continuing tort doctrine to extend the repose period.

14

> 5. *Zurich Does Not Have a Viable Claim for Failure to Disclose Alleged Malpractice.*

Again, relying on *Zoss*, Zurich argues that Attorney Defendants' failure to disclose their mistakes to Zurich extended the repose period. (Doc. 62 at p.10). Again, this argument fails.

As noted above, the *Robinson-Podoll* court recognized that an attorney has a duty to disclose when they know they made a mistake that is reasonably expected to be the basis of a malpractice claim against them. *Robinson-Podoll*, at ¶ 41, 939 N.W.2d at 46. A breach of this duty does not extend the repose period for the initial malpractice. *See id.* at ¶ 45. Instead, this breach creates a separate cause of action subject to a separate repose period. *Id.* at ¶¶ 46–47; *Zoss*, 2021 WL 1312868, at *4. To prevail on a claim based on an attorney's failure to disclose an error to a client that is reasonably expected to form the basis of a malpractice claim, the client in *Robinson-Podoll* had to show all of the following: "that she had [1] a viable claim for damages in the personal injury action [against Ewalt], [2] a viable claim for legal malpractice against Howey-Fox involving the missed personal injury statute of limitations, and [3] a viable claim for legal malpractice against Howey-Fox in failing to disclose the initial claim of malpractice to Robinson-Podoll during the ongoing representation." *Robinson-Podoll*, 2020 S.D. at ¶ 47, 939 N.W.2d at 48.

Here, Zurich cannot bring a legally sustainable, separate malpractice claim based upon failure to disclose the Attorney Defendants' alleged mistakes. Even assuming for argument's sake only that Attorney Defendants made mistakes before the October 24, 2016 mediation that could form the basis for a malpractice claim, Zurich *must* present expert testimony that Attorney Defendants breached the applicable standard of care by failing to disclose that malpractice. When the South Dakota Supreme Court recognized the failure to disclose malpractice claim, the court expressly stated "'it is most often necessary to have an expert witness explain how the lawyer's actions fell below the standard of care.'" *Id.* at ¶ 41 (quoting *Zhi Gang Zhang v. Rasmus*, 2019 SD

15

46, ¶ 28, 932 N.W.2d 153, 162). A lay jury cannot know when a lawyer would have a duty to disclose a prior "act, error, or omission that is reasonably expected to be the basis of a malpractice claim." *Id.* at ¶ 41; *see also Hamilton v. Sommers*, 2014 SD 76, ¶ 22, 855 N.W.2d 855, 862 (explaining the necessity of an expert to establish breach of the standard of care in legal malpractice cases).

In this case, Zurich's expert, Campbell, never opines that Palmer breached the standard of care by failing to disclose Attorney Defendants committed malpractice. (Ex. 115; Campbell Depo. at pp.37–38). At his deposition, Campbell was specifically asked if he opined Attorney Defendants breached the standard of care in any way **after** the mediation. (Campbell Depo. at pp.37–38). He opined that Palmer breached the standard of care by failing to discuss the answer and his decision not to assert affirmative defenses with Zurich. (Campbell Depo. at pp.37–38). Campbell also opined that Palmer breached the standard of care by failing to provide "written documentation regarding the answer and your opinion with respect to raising certain affirmative defenses." (Campbell Depo at p.38). He also opined that Palmer may have breached the standard of care in not propounding discovery to the plaintiff. (Campbell Depo. at p.38). Campbell does not identify any other alleged breaches of the standard of care occurring after the mediation. (Campbell Depo. at p.38). Thus, Zurich does not have an expert opining that Attorney Defendants breached the standard of care by failing to disclose that they committed an "act, error or omission that is reasonably expected to be the basis of a malpractice claim." *Robinson-Podoll*, 2020 S.D. at ¶ 41, 939 N.W.2d at 46. Without this expert testimony, Zurich cannot assert a malpractice claim for failure to disclose malpractice as a matter of law. *See id.*

Moreover, even if Zurich proffered expert testimony that Attorney Defendants breached the duty to disclose the alleged malpractice committed before the mediation, Zurich cannot show

any harm from that breach as a matter of law. *Robinson-Podoll* recognized that the harm caused by a failure to disclose malpractice claim is that the client loses the opportunity to file a legal malpractice claim against the lawyer within the three-year statute of repose. *See id*.

Here, Zurich knew about the alleged malpractice before the three-year repose period expired. In its Second Amended Complaint, Zurich alleges Attorney Defendants had a duty to disclose their wrongful conduct, which formed the basis of a malpractice claim against them. (Doc. 33 at ¶¶ 38–39). Zurich's Second Amended Complaint admits the required disclosures occurred no later than August of 2018. (Doc. 33 at ¶ 40). The mediation occurred on October 24, 2016. Thus, assuming the continuing tort doctrine applied to all the alleged negligent acts through the mediation, Zurich still had over one year remaining on the three-year statute of repose when it received the disclosure in August of 2018.[8] Despite this, Zurich did not commence this malpractice lawsuit until April 20, 2020. Thus, any failure to disclose the alleged malpractice neither prevented Zurich from timely suing the Attorney Defendants nor caused any harm.

Nor does Zurich argue in its brief or present any evidence indicating that failure to disclose the malpractice before August 18, 2018, caused any harm. Indeed, Zurich cannot make that argument because, by January of 2018, Zurich retained Hinshaw Firm to take over lead representation in the case. (Doc. 63 at p.3, at No.14; Wagner Depo. at p.148; Exhibit 104). At this point, the Hinshaw Firm was able to fully advise Zurich about what had been done (or not done) in defending the bad faith case. The three-year repose period had not yet expired on any potential malpractice or breach of fiduciary duty claim against Attorney Defendants because Attorney

---

[8] The continuing tort doctrine may apply to all negligent acts up through the mediation because they all were part of the alleged failure to properly investigate the case and advise the client on evaluating the early settlement offer. These alleged negligent acts all caused the same harm, namely loss of the early settlement opportunity. The harm from those alleged acts occurred at the mediation, and thus, the continuing tort doctrine may well have provided that the "occurrence" for the statute of repose occurred at the mediation. But, under any scenario, the "occurrence" took place no later than the October 24, 2016, mediation.

17

Defendants were not engaged to defend Zurich until March of 2015. (Palmer Depo. at pp.11–12; Exhibit 1; Wagner Depo. at p.31; Exhibit 72). Logically, any malpractice committed by Attorney Defendants had to occur after they were representing Zurich. As a result, there is no conceivable way the statute of repose would have expired **before** March of 2018. Because the Hinshaw Firm had assumed primary defense of the case in January of 2018, Zurich had all the information it needed to consider and file a malpractice claim against the Attorney Defendants within the repose period. In turn, any alleged failure to disclose the prior malpractice did not cause any harm as a matter of law.

### B. As an Alternate and Separate Basis, Attorney Defendants Are Entitled to Summary Judgment Because Zurich Has Not Presented Admissible Expert Testimony Regarding Breach of the Standard of Care.

In its opening brief, Attorney Defendants argue that Zurich must present admissible expert testimony on breach of the standard of care to survive summary judgment. (Doc. 51 at pp.18–19). Zurich does not dispute this legal argument. (Doc. 62 at p.2). Instead, it argues that Campbell's standard of care opinions are admissible.(Doc. 62 at p.2). Zurich is wrong, and Campbell's opinions should be stricken for the reasons stated in Attorney Defendants' briefs on the motion to exclude. Once stricken, Zurich does not have an expert on the standard of care, and Attorney Defendants are entitled to summary judgment on all claims. *See Zhi Gang Zhang v. Rasmus*, 2019 SD at ¶ 41, 932 N.W.2d at 165 (granting summary judgment for the attorney defendant because the plaintiff had "not established a submissible case of legal malpractice . . . because he lack[ed] critical expert testimony").

### C. Zurich's Claim for Breach of Fiduciary Duty is Barred by the Statute of Repose.

Zurich generally argues that Campbell's opinions about Palmer's failure to follow billing guidelines and failure to communicate with the client states a viable claim for breach of fiduciary

duty. (Doc. 62 at pp.15–16). Zurich's breach of fiduciary duty claims are barred by the statute of repose for the same reasons as the malpractice case. *See Slota*, 2020 SD 55 at ¶ 23, 949 N.W.2d at 876. For those alleged breaches before the mediation, the statute of repose bars them. For any alleged breach after the mediation, there is no evidence the alleged breach caused any harm. As a result, Attorney Defendants are entitled to summary judgment dismissing on all claims, including the breach of fiduciary duty claim.

## CONCLUSION

For the aforementioned reasons, Attorney Defendants respectfully request that the Court grant their Motion for Summary Judgment.

Dated this 8th day of March, 2023.

> /s/ Kristin N. Derenge
> Jason R. Sutton
> Kristin N. Derenge
> BOYCE LAW FIRM, LLP
> 300 S. Main Avenue/P.O. Box 5015
> Sioux Falls, SD 57117-5015
> (605) 336-2424
> knderenge@boycelaw.com
> jrsutton@boycelaw.com
> Attorneys for Defendants