# In The Matter Of:

*AMERICAN ZURICH INSURANCE COMPANY, ET AL v.*
*J. CRISMAN PALMER, ET AL*

---

*WITNESS: MIKE ABOUREZK*
*September 1, 2022*

---

*PRUSS REPORTING*
*662 Enchanted Pines Drive*
*Rapid City, South Dakota  57701*
*(605) 390-3427*
*prussreporting@gmail.com*

Original File ABOUREZK MIKE 09012022.txt
Min-U-Script® with Word Index



EXHIBIT
G

Page 61

1  Q  Starting on page 10 through page 13 of
2     Exhibit 58 -- and I'm using the page numbers at
3     the top from the court filing --
4  A  Right.
5  Q  -- are a series of proposed additional affirmative
6     defenses; is that correct?
7  A  I think starting at page 9.
8  Q  9 on the bottom pagination, right?
9  A  Oh, you're right.  You're right.  Page 10 has the
10    filing stamp.
11 Q  Too many numbers.
12 A  Yeah.
13 Q  When you saw the request to add the first
14    affirmative defense, failure to exhaust
15    administrative remedies, did that create
16    concerns -- any concern for you in prosecuting the
17    plaintiff's case in this matter?
18 A  No.  There had already been rulings and I knew
19    that the most conservative -- or I should say the
20    ruling that was closest to the boundary I could
21    clear pretty easy, so there wasn't any concern
22    over that defense.
23 Q  How about the second affirmative defense, failure
24    to submit to primary jurisdiction?  Did that
25    proposed additional affirmative defense create any

Page 62

1     concerns for you in prosecuting this case?
2  A  No.  The case had already been submitted to the
3     Department of Labor.
4  Q  How about the third affirmative defense,
5     res judicata?  Did that proposed defense create
6     any concerns for you in prosecuting the case?
7  A  No.
8  Q  Why not?
9  A  Well, the settlement agreement said that he was
10    entitled to benefits, not that he wasn't entitled
11    to them.  It said that they would accept
12    liability -- I'm trying to remember the wording,
13    and I don't remember the exhibit number here, but
14    the settlement agreement supported that Zurich was
15    responsible, had accepted liability for medical
16    expenses.
17 Q  Item number four -- or the fourth affirmative
18    defense, release, did seeing that additional
19    proposed affirmative defense create any concerns
20    from you in prosecuting the case?
21 A  No, because he hadn't released any of the damages
22    sought in the bad faith complaint.  This was a
23    work comp settlement.  And it says right in the
24    first part of the document that it is pursuant to
25    Title 62.  And I forget the statute number.  But

Page 63

1     that's the work comp title.  And the Department of
2     Labor doesn't have any -- doesn't even have
3     jurisdiction to deal with non-work comp matters
4     like bad faith damages.
5  Q  How do the bad faith damages compare to the
6     damages -- or remedies that are available under
7     the work comp statutes?
8  A  How do they compare?
9  Q  Yeah.  I mean, you indicated that, you know, the
10    settlement was the work comp side.  And that isn't
11    the bad faith damages that you were seeking.  How
12    are they different?
13 A  Work comp has a schedule of benefits.  Has a
14    schedule of payments.  It requires payment of
15    medical expenses.  It requires payment of
16    temporary total disability and payment of
17    permanent total disability or permanent partial
18    disability.  Those -- those are specific work comp
19    benefits.  And there are some other benefits,
20    retraining, and so on.
21       But applicable to this case, the central
22    focus was that they -- they refused to pay any
23    further medical expenses, and so he stopped
24    getting treatment for pain.  He was getting
25    epidural steroid blocks and treatment for pain.

Page 64

1     And by denying that, he went three or four years,
2     it seems like, without being able to get
3     treatment.
4  Q  Is pain and suffering a recoverable element of
5     damage under South Dakota law in worker's
6     compensation proceedings?
7  A  Right, it is, along with emotional distress.  And
8     neither one of those are part of the work comp
9     compensation scheme.
10 Q  I'm going to reask the question because I think we
11    miscommunicated.
12 A  Okay.
13 Q  Under the work comp scale can you recover
14    emotional distress or pain and suffering?
15 A  No.
16 Q  Can you recover those as elements of damage in a
17    bad faith case in South Dakota?
18 A  Yes.
19 Q  And were you seeking those damages here?
20 A  Yes.
21 Q  The Exhibit 58, item number five, the fifth
22    affirmative defense, statute of limitations,
23    did -- when you saw that Zurich was seeking to add
24    that affirmative defense, did that create any
25    concerns for you in prosecuting this action?

Page 65

1  A  No.
2  Q  Do you know what the -- at least the District of
3     South Dakota has ruled is the applicable statute
4     of limitations for bad faith in South Dakota?
5  A  Yes, I do.
6  Q  What is it?
7  A  Six years.
8  Q  Do you recall ever being concerned that you had
9     any statute of limitations in this case?
10 A  No, I don't recall having any concern about that.
11 Q  The sixth affirmative defense, failure to
12    mitigate, did that additional potential
13    affirmative defense create any concern for you in
14    prosecuting the case?
15 A  I thought it was a joke. It's just boilerplate.
16    Boilerplate and garbage.
17 Q  How about number seven, superseding cause? When
18    you saw that did that create any concerns for you
19    in prosecuting your claims against Zurich?
20 A  No. This is -- that's just going through the list
21    of affirmative defenses and claiming every one of
22    them, regardless of whether there is any scintilla
23    of merit to it.
24 Q  Based upon your work in this file, were you aware
25    of any affirmative defenses that you were

Page 66

1     concerned would be asserted against you?
2  A  No.
3  Q  So I assume your answer for number eight, setoff,
4     would be the same, that didn't concern you when
5     you saw it?
6  A  Well, no. If there was -- if they were entitled
7     to any setoff -- and I'm -- I'm not recalling that
8     they were, but if they were entitled to one, I
9     don't care if they get it.
10 Q  And then the improper party, looking at
11    paragraph 9 of the affirmative defense, it
12    indicates plaintiff's cause of action is barred
13    against Zurich North America because it's merely a
14    trade style used by ZAIC, and it continues. Is
15    that the same issue that you exchanged
16    correspondence with Cris Palmer about early in the
17    case?
18 A  Yes.
19 Q  And you told him why you disagreed with him
20    legally, correct?
21 A  Yeah, I told him why I disagreed with it. But
22    even if -- even if you assume that there was merit
23    to this, all that means is one of these corporate
24    entities isn't going to be a defendant. That
25    doesn't relieve the other corporate entities from

Page 67

1     being defendants. So it's not a big deal.
2        (Whereupon, Exhibit 59 was then marked.)
3  Q  (BY MR. SUTTON) Mike, you've been handed Exhibit 59
4     which is Zurich's Rule 12(c),(h)(2)(b) Motion to
5     Dismiss.
6        MR. SUTTON: Habits die hard. I'm trying to
7     make your life easier. Maybe it's worse. Sorry.
8     If I started talking to my wife that way, someone
9     can slap me. That you can put on the record.
10 Q  (BY MR. SUTTON) Did you receive this Motion to
11    Dismiss that was filed on behalf of?
12 A  Yes.
13 Q  And what is the date of this filing?
14 A  September 7, 2018.
15       (Whereupon, Exhibit 60 was then marked.)
16 Q  (BY MR. SUTTON) Mike, have you -- do you have in
17    front of you Exhibit 60?
18 A  Yes.
19 Q  And is this Zurich's brief in support of the
20    motion to dismiss that was Exhibit 59 that we
21    looked at?
22 A  Yes.
23 Q  And then will you look at Exhibit 14?
24 A  Okay. I got it.
25 Q  Is Exhibit 14 your response in opposition to the

Page 68

1     Motion to Amend and the Motion to Dismiss?
2  A  Yes, it is.
3        MR. SUTTON: Let's go off the record for a
4     second.
5        (Off the record.)
6  Q  (BY MR. SUTTON) Will you please turn to Exhibit 12,
7     Mike?
8  A  Okay.
9  Q  And does Exhibit 12 -- is that the reply brief
10    that you received from Zurich in support of both
11    its motion -- in support of both its Motion to
12    Amend the Answer as well as a Motion to Dismiss?
13 A  Yes.
14 Q  Will you please turn to GPNA 719 on Exhibit 12?
15 A  Yes. I'm there.
16       MR. HOYT: What page is that?
17       MR. SUTTON: That's page 11 of the brief.
18 Q  (BY MR. SUTTON) What did you understand the
19    argument being made by Zurich to support dismissal
20    of your bad faith case?
21 A  That he -- that he, Joe Leichtnam, never obtained
22    a final decision from the Department --
23    South Dakota Department of Labor establishing that
24    he was denied worker's compensation benefits to
25    which he was entitled. It says it here