UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| AMERICAN ZURICH INSURANCE COMPANY and ZURICH AMERICAN INSURANCE COMPANY,<br><br>Plaintiffs,<br>vs.<br><br>J. CRISMAN PALMER and GUNDERSON, PALMER, NELSON & ASHMORE, LLP,<br><br>Defendants. | 5:20-CV-05026-KES<br><br>ORDER DENYING PLAINTIFFS' MOTION TO RECONSIDER |

Plaintiffs, American Zurich Insurance Company and Zurich American Insurance Company (collectively Zurich), request that the court reconsider its decision finding that Zurich's breach of fiduciary duty claim against J. Crisman Palmer (Palmer) and Gunderson, Palmer, Nelson & Ashmore, LLP (collectively defendants) requires expert testimony. *See* Docket 68. Defendants resist this motion. *See* Docket 70. After reviewing the parties' submissions, the court denies Zurich's reconsideration motion.

**I.   Discussion**

First, the court must determine how to appropriately characterize Zurich's reconsideration motion, and second what the appropriate standards are for resolving it. Zurich labels its motion as one under Federal Rule of Civil Procedure 59(e), which authorizes alteration or amendment of a judgment after its entry. Docket 68. But here, the court granted in part and denied in part

1

defendants' summary judgment motion and did not enter a final judgment. *See* Docket 67. Thus, by Rule 59(e)'s text, Zurich's motion does not appear to arise under Rule 59(e).

Instead, under Civil Procedure Rule 54(b), interlocutory orders that "adjudicate[] fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Thus, because the court's order on defendants' summary judgment motion did not adjudicate all of the claims, because it partially denied defendants' summary judgment motion, the court finds that Zurich's reconsideration motion properly falls under Rule 54(b). *See Juliannello v. K-V Pharm. Co.*, 791 F.3d 915, 923 n.3 (8th Cir. 2015) (noting that Rule 54(b) applies to orders that "adjudicate[], but [do] not enter final judgment on, fewer than all claims in an action with multiple claims[]"); *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 336-37 (5th Cir. 2017) (discussing the distinction between Rules 54(b) and 59(e) and finding a non-final order to be subject to Rule 54(b)); *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015) (recognizing the distinction between Rules 54(b) and 59(e)); *Qazizadeh v. Pinnacle Health Sys.*, 214 F.Supp.3d 292, 295 (M.D. Pa. 2016) (rejecting the view that a reconsideration motion of order granting partial summary judgment falls under Rule 59(e) and instead holding reconsideration of non-final order falls under Rule 54(b)); *G&E Real Estate, Inc. v. Avison Young-Washington, D.C., LLC*, 201

2

F.Supp.3d 50, 51-52 (D.D.C. 2016) (reviewing party's motion to reconsider a portion of court's order granting summary judgment in part under Rule 54(b)).

Because Zurich's moves to reconsider an interlocutory order, the court generally has discretion over whether to entertain Zurich's motion. *See Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003); *Austin*, 864 F.3d at 336 (noting the burden to justify reconsideration under Rule 59(e) is higher than one under Rule 54(b) and collecting cases holding the same); *Cobell*, 802 F.3d at 25-26 (same).

"A court may reconsider an interlocutory order to 'correct any clearly or manifestly erroneous findings of fact or conclusions of law.' " *Roemen v. United States*, 343 F.R.D. 619, 623 (D.S.D. 2023) (quoting *Jones v. Casey's Gen. Stores*, 551 F.Supp.2d 848, 854 (S.D. Iowa 2008). "Reconsideration may be granted if the earlier decision misunderstood a party, made a decision outside of the adversarial issues, or because of a 'controlling or significant change in law' since the issues were submitted to the court." *Westinghouse Elec. Co. v. United States*, 2009 WL 881605, *4 (E.D. Mo. 2009) (quoting *Singh v. George Washington Univ.*, 383 F.Supp.2d 99, 101 (D.D.C. 2005)). Generally, parties may not rely on Rule 54(b) to make legal arguments that were available to them

3

earlier or to simply rehash an argument previously made, but the court nevertheless may grant reconsideration as justice requires. *See id.*

Zurich could have raised all of the arguments it is now making in its reconsideration motion during the original summary judgment round of briefing because none of its arguments rely on evidence or cases that were unavailable to it at the time it responded to defendants' motion for summary judgment. *See generally* Docket 38 (citing cases from the 1990's up until 2020). Thus, while not an automatic bar, the court finds that it must find a clear or manifest error of law before justifying reconsideration. *See Roemen*, 343 F.R.D. at 623.

Under South Dakota law, to succeed on a breach of fiduciary duty claim, a plaintiff must prove:

> (1) that the defendant was acting as plaintiff's fiduciary; (2) that the defendant breached a fiduciary duty to plaintiff; (3) that plaintiff incurred damages; and (4) that the defendant's breach of the fiduciary duty was a cause of plaintiff's damages.

*Chem-Age Indus., Inc. v. Glover*, 652 N.W.2d 756, 772 (S.D. 2002). For purposes of the summary judgment order and the accompanying reconsideration motion, the central issue is whether Zurich needs expert testimony to establish the second element, namely that defendants breached a fiduciary duty to Zurich. *See* Docket 68 at 2-3; Docket 67 at 35-37. To establish a breach of fiduciary duty, a plaintiff must show that the attorney failed to uphold a duty of loyalty or confidentiality. *See Behrens v. Wedmore*, 698 N.W.2d 555, 576 (S.D. 2005). Generally, expert testimony is required to

4

establish a breach of professional duty unless the subject is "within the common knowledge and comprehension of persons possessed of ordinary education, experience and opportunity." *See Hanson v. Big Stone Therapies, Inc.*, 916 N.W.2d 151,158 (S.D. 2018) (quoting *Magbuhat v. Kovarik*, 382 N.W.2d 43, 46 (S.D. 1986)).

Zurich argues that Palmer's failure to disclose his intention to not depose Leichtnam to Zurich was misleading and thus "per se disloyal[]." *See* Docket 68 at 4. Under Zurich's view, a jury would be able to determine, without expert testimony, whether Palmer breached his fiduciary duty of loyalty because "[a] simple jury instruction defining breach of loyalty to include misleading or deceiving the client would provide all the guidance needed." *See id.* Relatedly, Zurich suggests that requiring expert testimony on whether defendants breached their fiduciary duty of loyalty would be "insult[ing]" here, because "[l]ay jurors have enough experience and knowledge to understand . . . that Palmer breached the duty of loyalty by concealing his intent not to take the plaintiff's deposition as specifically requested by Zurich." Docket 71 at 2-3. The court disagrees.

In *Behrens*, the South Dakota Supreme Court implicitly rejected the broad assumption that misleading a client is per se disloyal. 698 N.W.2d at 576. In fact, the Court found that the plaintiff was not entitled to an instruction on breach of fiduciary duty. *See id.* There, the plaintiff's attorney had failed to communicate the basis of a fee that the attorney had charged the plaintiff, and later the plaintiff disputed the fees' reasonableness. *See id.* The

5

South Dakota Supreme Court found that this failure alone was insufficient to justify requiring breach of fiduciary duty jury instructions. *See id.* Instead, the Court explicitly refused to find that "a failure to timely communicate a fee arrangement was *automatically* and *necessarily* a breach of a *fiduciary* duty." *Id.* at 577. (emphasis in original). *Behrens* thus recognized that a failure to be fully transparent does not automatically mean an attorney has breached the duty of loyalty or confidentiality. *See id.*

    Here, the court recognizes that it found that there is evidence, when viewed in the light most favorable to Zurich, that shows Palmer was not fully transparent and failed to timely communicate to Zurich his intentions regarding Leichtnam's deposition. *See* Docket 67 at 20-21. But like in *Behrens*, this finding alone does not itself appear sufficient to establish that Palmer necessarily breached his duty of loyalty. Here, the court faces a similar, but distinct inquiry: whether Palmer's action is so inherently disloyal such that a person of common knowledge would necessarily find a breach of the duty of loyalty, without any background legal understanding of such duty. *See Hanson*, 916 N.W.2d at 158. The court predicts a South Dakota Supreme Court would find that in this case, a jury needs expert testimony on what precisely constitutes a breach of the duty of loyalty and specifically whether misleading a client about the status of a deposition is per se disloyal. As *Behrens* instructs, the mere fact that a lawyer fails to timely disclose information is insufficient to show a breach of fiduciary duty. 698 N.W.2d at 575-77. Similarly, just because Palmer failed to disclose all pertinent information about his intention on

6

whether he would depose Leichtnam does not necessarily mean a jury—without expert testimony—could find Palmer breached his duty of loyalty.

Contrary to Zurich's suggestion, the court predicts that the South Dakota Supreme Court would require "expert explanation" on the precise limits, situations, and contexts in which an attorney's lack of full candor to a client could breach the duty of loyalty. *See* Docket 71 at 4. In fact, many of the cases dealing with the duty of loyalty relate to a lawyer's obligation to communicate information to a client about a lawyer's potential conflict of interest or inability to comply with fiduciary obligations, rather than a lawyer's failure to timely communicate their litigation plan. *See, e.g.*, Ronald E. Mallen, 4 Legal Malpractice, § 15:26 (2023). Even if a dishonest statement that does not pertain to an attorney's conflict of interest or inability to fulfill a fiduciary duty can constitute a breach of the duty of loyalty, and even if there could be a certain level of dishonesty that is so egregious that a jury could find it breached the duty of loyalty without expert testimony, this case does not reach that level. The court rejects Zurich's argument.

Zurich also cites *Badis v. Martinez*, 819 P.2d 551 (Colo. Ct. App. 1991), *aff'd in part and rev'd in part*, 842 P.2d 245 (1992), a case dealing with whether a state statute seeking to expedite claims against licensed professionals mandated dismissal of the plaintiffs' negligence, breach of contract, and breach of fiduciary duty claims against their former attorney. The statute at issue in *Badis* required plaintiffs who were bringing suits against licensed professionals based upon alleged professional negligence to file a certificate (certifying they

had consulted with two professionals in the same area of expertise as the defendants and that those professionals confirmed the plaintiffs' claims had substantial justification) if the claims required the plaintiffs to submit expert testimony. *See id.* at 553 (citing Colo Rev. Stat. § 13-20-602). The trial court dismissed the plaintiffs' claims because the plaintiffs failed to timely submit this certification. *See id.*

The Colorado Court of Appeals reversed and remanded the case to the trial court to determine in the first instance whether the plaintiffs' negligence claim required expert testimony under the specific allegations of such claim. *See id.* at 554-55. The court further held that the statute, which applied only to actions "based upon the alleged professional negligence of licensed professionals," did not apply to the plaintiffs' breach of fiduciary duty and breach of contract claims. *See id.* Discussing the differences in the elements between a negligence claim as compared to a breach of contract or breach of fiduciary duty, the Court of Appeals held that this certification requirement did not apply to breach of fiduciary or breach of contract claims because such claims are not "based upon the alleged professional negligence of a licensed professional." *See id.*

Zurich argues that *Badis* stands for the proposition that breach of fiduciary duty claims are different than standard negligence claims, and that expert testimony may not be necessary for a breach of fiduciary duty claim depending on the particular facts. *See* Docket 68 at 3-4. That may be so, but *Badis* does not demonstrate that this court's previous order—finding that

8

Zurich was required to submit expert testimony to support its breach of fiduciary duty claim under the facts of the case—was incorrect, much less a manifest error. Rather, the Colorado Supreme Court's decision reversing the Court of Appeals' decision actually supports this court's initial order.

The Colorado Supreme Court disagreed with the Court of Appeals' holding that the state certification statute necessarily only applied to negligence suits and not breach of fiduciary duty suits (or breach of contract suits). *See Martinez v. Badis*, 842 P.2d 245, 251 (Colo. 1992). The Supreme Court reasoned that the statute's requirement that the suit only be "based upon" negligence was broad enough to encompass breach of fiduciary duty and breach of contract claims where the claims "require proof of professional negligence as a predicate to recovery, whatever the formal designation of the claim might be." *Id.* The Supreme Court then compared negligence claims to breach of fiduciary duty claims, explaining that there is significant overlap and that breach of fiduciary duty claims "are in some, but not all, contexts basically negligence claims incorporating particularized and enhanced duty of care concepts often requiring the plaintiff to establish the identical elements that must be established by a plaintiff in negligence actions." *Id.* at 251-52. Importantly for this case, the Colorado Supreme Court supported this assertion by further stating:

> For example, unless a breach of a fiduciary duty claim is admitted by the defendant, the plaintiff alleging a breach of fiduciary duty arising from the attorney-client relationship must establish by means of expert testimony the applicable standard of care and the defendant's failure to adhere to that standard of care.

9

*Id.* at 252. The Supreme Court thus recognized a carveout from the general rule that breach of fiduciary duty claims require expert testimony—when the defendant has *admitted* a breach. *See id.* But here, even if South Dakota would recognize this carveout, defendants do not admit that Palmer breached his duty of fiduciary duty, so expert testimony would be needed. *See generally* Docket 51 at 26 (discussing only Palmer's *alleged* wrongful acts). Thus, the *Badis* decisions from the Colorado Court of Appeals and Colorado Supreme Court do not demonstrate a manifest error of law justifying reconsideration of this court's previous decision.

Zurich next cites *Johnson v. DeLay*, 809 S.W.2d 552 (Tex. App. 1991), but this case also fails to show that the court made a manifest error of law. In *Johnson,* the plaintiff, Johnson, sued her former attorney for negligence and violations of the Texas Deceptive Trade Practices Act (DTPA) in preparing legal documents for her and misrepresenting facts to her in connection with the sale of her business to a third-party. *See id.* at 553. The trial court granted a directed verdict in favor of the attorney on both counts. *See id.* Johnson appealed, challenging only the trial court's dismissal of her DPTA claim, and argued that even though she did not present expert testimony on her attorney's legal services, she did not need to do so for all of her DPTA claims. *Id.* at 553, 555.

The Texas Court of Appeals agreed with Johnson because some of Johnson's claims did not require proof that her attorney violated any professional standard of care. *See id.* at 555. The court outlined that the

10

attorney's actions in the case "operated on two levels." *Id.* On one hand, the attorney acted as Johnson's attorney and thus expert testimony was required so the jury could determine whether he conducted himself professionally as an attorney and gave adequate legal advice. *See id.* On the other hand, some of the attorney's misrepresentations, including representations that an insurance policy for Johnson was forthcoming (when it in fact was not), "did not concern the rendition of legal services[.]"*Id.* Thus, the *Johnson* court reasoned, "[a] jury could rightfully decide, without the benefit of expert testimony, whether DeLay misrepresented facts to Johnson and whether they caused Johnson the damages she claims." *Id.*; *see also* Tex. Rev. Civ. Stat. TX Bus & Com § 17.46(a) (1995) (prohibiting "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce").

This case differs from *Johnson.* Zurich alleges that defendants breached their fiduciary duty to Zurich. The elements for a breach of fiduciary duty claim—and specifically the second element of whether an attorney has breached the duty of loyalty or confidentiality—is distinct from the underlying elements in *Johnson*, which merely required the plaintiff to prove the attorney's actions or practices were false, misleading, or deceptive. *Compare Behrens*, 698 N.W.2d at 576, *with Johnson*, 809 S.W.2d at 555. *See also* Tex. Rev. Civ. Stat. TX Bus & Com § 17.46(a) (1995). Without the assistance of expert testimony, a layperson does not have the experience to determine whether an attorney's failure to communicate his or her intentions on whether to depose a witness necessarily breaches his or her duty of loyalty to the client. In contrast,

11

*Johnson* recognizes that a layperson can understand whether an attorney's actions—independent of rendering legal services—are false, misleading, or deceptive. *See Johnson*, 809 S.W.2d at 555. In short, *Johnson* does not alter the court's analysis and is insufficient to show the court made a manifest error in its original decision.[1]

Next, Zurich cites a pair of cases from California, which appear to recognize that under California law, a plaintiff need not submit expert testimony to prevail in a breach of fiduciary duty case. *See* Docket 68 at 4-5; *see also Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP*, 593 F.Supp.2d 1153, 1170 (S.D. Cal. 2008); *Stanley v. Richmond*, 41 Cal Rptr.2d 768, 776 (Cal. Ct. App. 1995). But as discussed above, based on *Behrens* and *Hanson*, the court predicts the South Dakota Supreme Court would not follow California's approach. Another district court in the District of South Dakota predicted the same. *See Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.*, 2011 WL 902489, *12 (D.S.D. Mar. 15, 2011) ("In the absence of expert evidence to support [plaintiff's] claim the defendants violated their fiduciary duty, the defendants are entitled to summary judgment as a matter of law."). Furthermore, California's rule appears to be the minority approach, as the

---

[1] Zurich's reliance on a law review article is similarly misplaced and unpersuasive because although the article asserts that "proof of a breach of fiduciary duty may be shown without resort to expert testimony[,]" the sole case the article cites in support of this assertion is *Johnson*. *See* Ray Ryden Anderson and Walter W. Steele, Jr., *Fiduciary Duty, Tort and Contract: A Primer on the Legal Malpractice Puzzle*, 47 SMU L. Rev. 235, 249 (1994). The court has already distinguished *Johnson* and thus finds this law review article insufficient to show this court made a manifest error of law.

12

court is aware of no other state to follow it. To the contrary, the majority of states generally require expert testimony in breach of fiduciary duty claims. *See, e.g.*, *Sloan v. Urban Title Servs., Inc.*, 770 F.Supp.2d 227, 234-35 (D.D.C. 2011) (recognizing this general requirement is "well-established" under Virginia law); *Mittelstaedt v. Henney*, 969 N.W.2d 634, 640 (Minn. 2022) (recognizing general requirement); *Olfe v. Gordon*, 286 N.W.2d 173, 180 (Wis. 1980) (same); *Gables at Sterling Vill. Homeowners Ass'n., Inc. v. Castlewood-Sterling Vill. I, LLC*, 417 P.3d 95, 111 (Utah 2018) (recognizing expert testimony is required "to explain standard of care and breach issues where the average person has little understanding of the duties owed by particular trades or professions"); *Glenwood Farms, Inc. v. Ivey*, 2006 WL 5186486, *1 (D. Me. 2006) (recognizing general requirement under Maine law); *Ball ex rel. Hedstrom v. Kotter*, 746 F.Supp.2d 940, 955 (N.D. Ill. 2010) (recognizing general requirement under Illinois law). Thus, the court does not predict that South Dakota would adopt California's minority approach.

## II.  Conclusion

For the above reasons, it is ORDERED that Zurich's motion to reconsider (Docket 68) is DENIED.

Dated November 22, 2023.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE